(72 Misc. Rep. 343.)

### GROSS v. HOCHSTIM.

· (Supreme Court, Appellate Term. July 5, 1911.)

1. BREACH OF MARRIAGE PROMISE (§§ 13, 29*)—DEFENSES.

While undesirable traits or objectionable characteristics would not of themselves constitute a defense to an action for a breach of marriage promise, they may be pleaded in mitigation of damages.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 4-13, 44, 45; Dec. Dig. §§ 13, 29.*]

2. BREACH OF MARRIAGE PROMISE (§ 6*)—DEFENSES—FRAUD.

Where the plaintiff in an action for breach of marriage promise has been guilty of fraud inducing defendant's promise, or of fraudulent concealment, these facts may justify the refusal of defendant to perform the contract, and furnish a good defense to the action.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Dec. Dig. § 6.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BREACH OF MARRIAGE PROMISE (§ 9*)—RESCISSION OF CONTRACT—GROUND.

Bad faith or unfair dealing by one of the parties to an agreement to marry justifies the other in rescinding the contract, and misconduct by one of the parties less than would justify a divorce would justify the refusal of the other to enter into the contract of marriage.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 15, 16; Dec. Dig. § 9.*]

4. PLEADING (§ 214*)—DEMURRER—ADMISSIONS BY DEMURRER.

For the purpose of the determination of a demurrer to a defense, the facts alleged in the defense must be deemed true.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525–534; Dec. Dig. § 214.*]

5. BREACH OF MARRIAGE PROMISE (§ 13*)—RESCISSION OF CONTRACT—GROUNDS.

That a party to a marriage promise obtained moneys on the false representation that they were for the use of a certain firm is sufficient to justify the other party in refusing to marry.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 4–10; Dec. Dig. § 13.*]

6. FRAUD (§ 9*)—REPRESENTATIONS.

In an action for breach of marriage promise, a counterclaim alleging the promise of plaintiff to marry, and that confiding in such promise the defendant remained for nearly a year ready and willing to marry the plaintiff, and that the promise was induced by false representations as to the plaintiff's income, financial ability, and business position, and showing that such representations were material and false, and made with knowledge of their falsity, and that defendant believed them to be true, and by reason of such belief promised to marry plaintiff, stated a cause of action for fraud.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 8; Dec. Dig. § 9.*]

7. SET-OFF AND COUNTERCLAIM (§ 29*)—SUBJECT-MATTER—CLAIM ARISING OUT OF SAME TRANSACTION—"TRANSACTION."

Under Code Civ. Proc. § 501, subd. 1, authorizing a cause of action to be pleaded as a counterclaim, which arises out of the transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action, a cause of action for fraud in inducing a marriage promise is a proper subject of counterclaim in an action for breach of marriage promise, the word "transaction" in the statute not being limited to causes of action arising on the contract, but being broad enough to permit causes of action arising from tort to be subject of counterclaim, and the "transaction" not necessarily being identical in its particular facts and details with that set up in the complaint.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 49–51; Dec. Dig. § 29.*

For other definitions, see Words and Phrases, vol. 8, pp. 7060–7062, 7818, 7819.]

Appeal from City Court of New York, Trial Term.

Action by Jacob Gross against Helen Hochstim. From a judgment overruling plaintiff's demurrer to the second separate defense and to the counterclaim in defendant's answer, plaintiff appeals. Affirmed.

Argued before SEABURY, GUY, and BIJUR, JJ.

May & Jacobson (I. N. Jacobson, of counsel), for appellant.
Goldsmith, Rosenthal, Mork & Baum (Milton M. Goldsmith, of counsel), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SEABURY, J. This is an action to recover damages for breach of promise of marriage brought by a man against a woman. The complaint sets forth a cause of action, and the answer in so far as it is necessary for us to consider it pleads a defense and counterclaim. The defense alleges inter alia that since the defendant promised to marry the plaintiff she has discovered that his reputation is extremely bad; that he purchased goods and failed to pay for same; that he repeatedly lied to the defendant; that he pawned the engagement ring given to him by the defendant, and wore a false or imitation ring to deceive the defendant herein, so as to make the said defendant believe that the ring worn by the plaintiff was the one which had been given to the plaintiff by the defendant; that the said plaintiff boarded at a hotel and failed to pay the board until repeatedly and insistently requested so to do, taking about two months to pay the same; that he lived beyond his means and income, and was unable to pay his debts, and that his father was frequently compelled to pay them for him; that he would obtain money upon the representation that the said moneys were for the use of the firm of Sol. Gross & Co., which statements were false; that he informed the defendant that the engagement ring which the defendant had given the plaintiff was left by him to be repaired by Tiffany & Co., which statement was absolutely false and untrue. The counterclaim alleges that prior to the time when the defendant promised to marry the plaintiff he represented to her that he was earning $25 per week and had a 10 per cent. interest in the business of Sol. Gross & Co., a copartnership doing business in New York City, owning three factories in Brooklyn and one in Wilkes-Barre, Pa.; that he had charge of the New York factory of said firm, and was indispensable in said business; and that he had sufficient money in bank to get married and furnish a home for the defendant as good as that which she had at that time. The counterclaim also alleges that the representations were made by the plaintiff to the defendant for the purpose of inducing the defendant to enter into an agreement to marry the plaintiff; that the defendant believed these representations to be true, and "as a result of said representations * * * the defendant agreed to marry the plaintiff herein." It is also pleaded that these representations were false and known by the plaintiff to be false at the time he made them. After making other allegations, which it is not necessary to set forth in detail, the defendant demands judgment against the plaintiff for $20,000.

The plaintiff demurred to the defense upon the ground that it was insufficient in law, upon the face thereof, and demurred to the counterclaim on the ground that it appears on the face thereof, (1) that it is not of the character specified in section 501 of the Code of Civil Procedure; and (2) that it does not state facts sufficient to constitute a cause of action. The learned court below overruled the demurrer to the defense and to the counterclaim. From the judgment entered upon this decision the defendant appeals to this court.

[1] An agreement to marry is essentially different in its purpose from every other contract known to the law. In considering what acts would justify one in abrogating or rescinding the agreement,

the law keeps in mind the purpose sought to be accomplished by the agreement itself. While undesirable traits or objectionable characteristics would not of themselves constitute a defense to an action for damages for a breach of the promise, they might be pleaded in mitigation of damages. 5 Cyc. 1002.

[2] Where, however, the plaintiff has been guilty of fraud inducing defendant's promise to marry or of fraudulent concealment, these facts may be shown as a justification for the refusal to perform the contract and furnish a good defense to an action for breach of promise of marriage. Di Lorenzo v. Di Lorenzo, 174 N. Y. 467–472, 67 N. E. 63, 63 L. R. A. 92, 95 Am. St. Rep. 609.

[3] Bad faith or unfair dealing by one of the parties to the agreement justifies the other in rescinding the contract to marry, and I think it can safely be affirmed that misconduct by one of the parties less than would justify a divorce after marriage would justify a refusal by the other to enter into the contract of marriage. "The agreement to marry," says Mr. Bishop in his work on Marriage and Divorce (section 235), "is quite distinct in its nature and consequences from the mutual consent to present marriage which superinduces the status. It is a mere executory contract founded on a consideration which in the facts of most cases is mutual promises. In the main it is governed by the same rule as contracts relating to pecuniary affairs. The differences come from the dissimilarities of the thing contracted about. The parties must be persons competent in law to intermarry. They must act toward each other in good faith, and any deception, fraud, or vital mistake will invalidate the agreement in favor of either who are misled, and, after the bargain is entered into, ill conduct in one of them of a nature and to a degree not quite definable, yet far less than would be required for a divorce after marriage, will justify the other in rescinding it."

In Van Houten v. Morse, 162 Mass. 414, 38 N. E. 705, 26 L. R. A. 430, 44 Am. St. Rep. 373, it was held that where plaintiff undertakes without inquiry from defendant to state facts relating to the circumstances of his or her history or life, to his or her parentage or family, or to his or her former or present position, those facts, if material, must not only be stated truly, but defendant is also bound not to suppress or conceal any facts necessary to a correct understanding on the part of the defendant of the facts which are stated, and, if there is a willful concealment and suppression of such facts whereby defendant was led to believe that the matters to which such statement related were different from what they actually were, plaintiff is guilty of a fraudulent concealment.

Applying these rules to the defense alleged, we think that it was sufficient in law upon the face thereof, and that the court below was correct in overruling the demurrer to the defense.

[4] For the purpose of the determination of the demurrer, the facts alleged in the defense must be deemed to be true. Many of the allegations contained in the defense are indefinite and of such a character that the defendant might well be required to make them more definite and certain or to furnish a bill of particulars amplifying the allegations of her pleading.

[5] The defense, however, when viewed as a whole, cannot be said to be insufficient in law upon the face thereof. The allegation therein contained that the plaintiff obtained moneys upon the false representation that said moneys were for the use of the firm of Sol. Gross & Co., is, I think, sufficient to sustain the defense. If, as we must assume, this allegation is true, then it imputes dishonesty to the plaintiff of so grave a characer that it would in my judgment justify the defendant in her refusal to marry the plaintiff.

[6] In relation to the counterclaim, it is necessary, first, to determine whether it alleges any cause of action at all. It is clear that it does not allege a cause of action for breach of promise of marriage because it nowhere alleges a refusal to marry by the plaintiff or any breach on the part of the plaintiff. Although very inartificially pleaded, it does allege the promise of the plaintiff to marry the defendant, and that, confiding in such promise, the defendant remained for nearly a year ready and willing to marry the plaintiff, and that the promise to marry was induced by false representation as to the plaintiff's income, financial ability, and business position. That such representations were material sufficiently appear, and that they were false and made with knowledge of their falsity and that the defendant believed them to be true and by reason of such belief promised to marry the plaintiff is alleged. In effect, therefore, the counterclaim alleges that the defendant by reason of the false representations of the plaintiff was led into making a promise of marriage. I think that this fraud gave the defendant a cause of action against the plaintiff for such damages as she could prove she sustained by reason thereof. The counterclaim, therefore, states facts sufficient to constitute a cause of action to recover damages for fraud.

[7] The question therefore presents itself whether the counterclaim is of such a character that it may be pleaded in an action for breach of promise of marriage. Section 501 of the Code of Civil Procedure defines the character of a counterclaim, and the causes of action against which it may be pleaded. Subdivision 1 of that section authorizes a cause of action to be pleaded as a counterclaim which arises out of the transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action. The word "transaction" is not limited to causes of action arising upon contract, but is broad enough to permit causes of action arising from tort to be the subject of counterclaim in a proper case. The "transaction" referred to need not be, and in most cases could not be, identical in all its particular facts and details with that set up in the complaint. Here the defendant alleges that the contract for the breach of which the plaintiff sues was induced by the fraud of the plaintiff. If the allegations of the counterclaim be true, the cause of action which the plaintiff seeks to assert had its "foundation" in the fraud for which the defendant seeks damages. The contract upon which the plaintiff's cause of action depends and the defendant's counterclaim have their common origin in the plaintiff's fraud.

Mr. Pomeroy, in commenting upon the interpretation given to the

word "transaction" as used in the Code provision relating to counter-claims, says:

"It is more extensive than 'cause of action' or 'subject of the action,' for out of it the defendant's 'cause of action' is said to 'arise,' and it is also to be set forth in the complaint or petition, not as the 'cause of action,' but as the 'foundation' of the plaintiff's claim. It must therefore be something—that combination of acts and events, circumstances, and defaults, which, viewed in one aspect, results in the plaintiff's right of action, and, viewed in an-other aspect, results in the defendant's right of action. As these two op-posing rights cannot be exactly the same, it follows that there may be, and generally must be, acts, facts, events, and defaults in the transaction as a whole, which do not enter into each cause of action but are confined to one of them alone." Code Remedies (4th Ed.) § 650.

"It would seem," says the same author in section 663, "that little or no difficulty would be met in giving such a construction to the statutory definition as will embrace the cases of damages resulting from the plaintiff's fraud. If the action was on contract, such dam-ages formed a most familiar example of the former "recoupment," and it is only necessary to extend that doctrine to analogous cases in which a "transaction" is to be substituted in place of a contract.

I am of opinion, therefore, that the counterclaim states facts suf-ficient to constitute a cause of action, and that it is of such a char-acter that it may be properly pleaded in an action to recover dam-ages for breach of promise to marry. It follows that the court below was correct in overruling the demurrer to the defense and to the counterclaim.

Judgment affirmed, with costs. All concur.