Irving Beck, Appellant, *v.* Jean Cohen, Respondent.

First Department, March 10, 1933.

*Emanuel Redfield* of counsel [*Dwyer & Redfield,* attorneys], for the appellant.

*David Glucksman,* for the respondent.

SHERMAN, J.   Plaintiff, having moved for an order striking out an affirmative defense and counterclaim contained in the answer, has met with the dismissal of his own complaint on the ground that it does not state facts sufficient to constitute a cause of action.

Plaintiff pleads that in consideration of defendant's promise to marry him, he agreed to marry her and delivered to her an engagement ring of the value of $350 in anticipation of their marriage and conditioned upon the fulfillment by defendant of her agreement to marry him.   After having plighted her troth and received the ring, defendant refused to marry him, although he stood ready and willing to perform the agreement and she has declined to return the engagement ring to him upon his demand and continued to retain it to his damage.

By way of an affirmative defense and a counterclaim, the defendant pleads that the plaintiff misled her by falsely representing to her that he was a man of considerable financial means, in possession of sufficient moneys with which to support her in the event of their marriage and to provide and furnish an apartment for their prospective home, and also that he was engaged in a business in which he had invested considerable money so that he would be able, from the returns of that business, to support the defendant in the event of their marriage; that these representations upon which she relied in promising to marry him were discovered to be false, after she had in reliance upon them proceeded to make the necessary preparations for her marriage and expended in that connection the sum of $550; and upon discovering their falsity she repudiated the agreement, declined to wed the plaintiff, and asserts that by reason of this deceit she has been damaged in the sum of $550, for which she asks judgment.

The learned Special Term deemed it unnecessary to consider whether or not these allegations of the answer should be stricken out, for he took the view that the plaintiff was not, upon the face of his complaint, entitled to any relief.

Upon this appeal, the facts pleaded in the complaint must be assumed to be true and the allegations of the answer disregarded for the moment.   Therefore, the question is squarely presented whether a woman having accepted her suitor, may retain an engagement ring, while declining without cause to wed the donor.

It has been held that an engagement ring is in the nature of a pledge for the contract of marriage and that if the recipient break the contract, she should return the ring.   (*Jacobs* v. *Davis*, [1917] 2 K. B. 532.)   Such a ring is a symbol hallowed by social usage. That it is a conditional gift seems inherent in its very purpose. Possession should be retained during the engagement, which it

symbolizes, and is changed into firm ownership upon marriage. When the engagement fails, the symbol of its existence should be returned to him who gave it.

Of course, an engagement ring differs from gifts made to secure a lady's favor or gain her affection, which are unconditional. This distinction was pointed out as early as 1742 (*Robinson* v. *Cumming*, 2 Atk. 409; 26 Eng. Rep. 646), and recognized more recently in *Richmond* v. *Nye* (126 Mich. 602).

The weight of authority seems to go further and hold that any gift to the lady to whom the donor is engaged to be married, made in contemplation of marriage, is conditional and upon breach of the marriage engagement by the recipient, the donor may recover the property. (28 C. J. 651.)

In *Rosenberg* v. *Lewis* (210 App. Div. 690) the court divided as to the sufficiency of the allegations of the complaint, the minority holding that it sufficiently alleged that the gifts were made conditionally upon defendant's fulfillment of her promise to marry. The property involved was not an engagement ring. The majority opinion required that further facts be pleaded to show the understanding that the articles were conditionally presented to the donee.

That case may not be relied upon as an authority for the proposition that an engagement ring received by a defendant may be kept by her after she had, without excuse, repudiated her promise. So to hold would be to ignore the symbolism of the transaction. Unless the obligation to return it inheres in the very nature of the gift under such circumstances it is difficult to conceive that proof of an express condition can be made, as for instance that when the jilted suitor gave the ring he accompanied it with language to the effect that if she should later break the engagement and decline to marry him she must return the ring. But in the absence of such proof there must have been the implication that she would no longer retain the ring when the forthcoming marriage was through her mere change of mind to fail of accomplishment. A jury might well say the transaction was instinct with such agreement to return. The language of the complaint is broad enought to permit a recovery upon that theory; if despite its improbability the plaintiff, looking well to the future, had actually accompanied the gift by words showing the pleaded condition of the gift, he should be allowed to make proof thereof.

Cases are not wanting in this and other jurisdictions in which an engagement ring was recovered, for breach on her part, from the lady to whom a plaintiff had given it, as in *Benedict* v. *Flannery* (115 Misc. 627). Indeed, other property so given has been held recoverable. (*Cushing* v. *Hughes*, 119 Misc. 39; *Antaramian* v.

*Ourakian*, 118 id. 558.) In *Cushing* v. *Hughes* (*supra*) moneys given in consideration of a promise of marriage, broken by defendant, were held recoverable. In *Antaramian* v. *Ourakian* (*supra*) there were a variety of gifts, including presents to a considerable amount as well as a bank account.

In *Robinson* v. *Cumming* ([1742] 2 Atk. 409; 26 Eng. Rep. 646), where suit was brought for the value of a present given to a lady who afterwards married another, Lord Chancellor HARDWICKE concluded: " I think, in cases of this nature, these rules may be laid down, That if a person has made his addresses to a lady for some time, upon a view of marriage, and, upon reasonable expectation of success, makes presents to a considerable value, and she thinks proper to deceive him afterwards, it is very right that the presents themselves should be returned, or the value of them allowed to him: but, where presents are made only to introduce a person to a woman's acquaintance, and by means thereof to gain her favor, I look upon such person only in the light of an adventurer, especially where there is a disproportion between the lady's fortune and his, and therefore, like all other adventurers, if he will run risques, and loses by the attempt, he must take it for his pains."

In *Young* v. *Burrell* ([1576] Cary, 54; 21 Eng. Rep. 29) it was held: " The defendant confesseth by her answer, the having of a tablet or pomander in gold, demanded by the plaintant; and as to the twenty pounds likewise demanded by the plaintant, by him left with the said defendant as a token, at such time as he was a suitor for marriage to the defendant, she confesseth the same was left with her against her will, and she delivered the same over unto one Sydole her brother, who was a dealer with her on the plaintiff's behalf, to the end he should deliver the same over to the plaintant. It is ordered, the tablet be forthwith delivered by the defendant to the plaintant, which was done presently in Court; and as to the twenty pounds the plaintant shall call in the said Sydole by process."

In *Jacobs* v. *Davis* (*supra*) SHEARMAN, J., quoting with approval from *Robinson* v. *Cumming* (*supra*) and reviewing the history of the engagement ring, stated: " Though the origin of the engagement ring has been forgotten, it still retains its character of a pledge or something to bind the bargain or contract to marry, and it is given on the understanding that a party who breaks the contract must return it. Whether the ring is a pledge or a conditional gift, the result is the same. The engagement ring given by the plaintiff to the defendant was given upon the implied condition that it should be returned if the defendant broke off the engagement. She did breach the contract, and therefore must return the ring."

In *Cohen* v. *Sellar* ([1926] 1 K. B. 536), where plaintiff sued for breach of promise of marriage, there arose in the course of the trial the question which of the two litigants was entitled to the engagement ring. The jury found that the defendant had refused to carry out the promise of marriage. The court (McCARDIE, J.) reviewed in an able opinion many of the earlier authorities, and concluded (p. 547): " This I hold to be the correct legal view. If a woman who has received a ring refuses to fulfil the conditions of the gift she must return it. So, on the other hand, I think that if the man has, without a recognized legal justification, refused to carry out his promise of marriage, he cannot demand the return of the engagement ring."

These views underlie the decisions announced in a number of cases (*Humble* v. *Gay*, 168 Cal. 516; *Lumsden* v. *Arbaugh*, 207 Mo. App. 561; *Williamson* v. *Johnson*, 62 Vt. 378; *Burke* v. *Nutter*, 79 W. Va. 743).

Inasmuch as the complaint is sufficient on its face, plaintiff becomes entitled to the determination of his motion to strike out the affirmative defense and counterclaim. It seems clear that if the engagement ring was delivered to the defendant as a token of a promise of marriage induced by fraud, which the defendant had the right to repudiate upon discovery of the plaintiff's fraudulent purpose, he should not be permitted to reclaim his gift, for he is the one whose conduct prevented the marriage and her refusal to perform the engagement would be justified. The gift being conditional, the donor would, by his conduct have rendered it impossible for the condition to be performed, and, therefore, not be entitled to recover the ring. This is the basis of the decisions in *Cohen* v. *Sellar* (*supra*) and *Gross* v. *Hochstim* (72 Misc. 343) where the donor himself broke the engagement contract.

The counterclaim is likewise valid upon its face and is sufficient to admit proof of the fraud and of the necessary elements of an action in deceit.

The order appealed from should be modified by striking out the provision dismissing the complaint, and as so modified affirmed, without costs.

FINCH, P. J., and O'MALLEY, J., concur; MERRELL and MARTIN, JJ., dissent and vote for affirmance.

MARTIN, J. (dissenting). If the engagement ring was an absolute gift, title passed to the donee. If not an absolute gift, facts must be pleaded to show it was a conditional gift. (*Rosenberg* v. *Lewis*, 210 App. Div. 690.)

In the case of *Stromberg* v. *Rubenstein* (19 Misc. 647) Mr. Justice

McAdam in an opinion in the Appellate Term, which was concurred in by Daly, P. J., and Bischoff, J., said: "The plaintiff knew when he gave the ring to the defendant that he was parting with all dominion over the property; that the gift was irrevocable, and that as the defendant was under legal age her promise could not be enforced if she chose to plead infancy in defense."

While the court was there considering a case in which an infant was involved, nevertheless, it was there held that, unless the gift was conditional, title passed and there could be no recovery.

The order should be affirmed.

Merrell, J., concurs.

Order modified by striking out the provision dismissing the complaint, and as so modified affirmed, without costs.