Scileppi, J. (dissenting).
I dissent and vote to reverse. Plaintiff, a married man, seeks the return of an engagement ring, valued at some $60,000, which he gave defendant pursuant to her promise to marry him upon the dissolution of his prior marriage. The record indicates that the plaintiff had been living apart from his wife for several years and that both had previously agreed there should be a divorce. Plaintiff maintains that his estranged wife had actually retained an attorney; in his own words, the marriage was "as dead as a door nail.’’
On November 14, 1968, about one month after alleged gift of the ring, the defendant informed her suitor of a “ change of heart ” and her intention not to go through with the contemplated marriage. Hurried efforts at “ tender persuasion ” having proved futile, plaintiff requested the return of the ring. Defendant promptly suggested that he speak to her lawyer. Whereupon, plaintiff commenced the instant action seeking recovery of the ring or, in the alternative, the sum of $60,000.
Following the interposition of her answer, defendant moved for summary judgment dismissing the complaint. The plaintiff resisted that motion, claiming that neither he nor the defendant had done anything to break up [the former] marriage, and cross-moved to amend his complaint “ to include causes of action for fraud, unjust enrichment and monies had and received”. In support of that cross motion, plaintiff asserted that defendant had “ manuvered [him] into a position of giving her [the] ‘ engagment ring, ’ with the thought that she would eventually keep it without marrying me.”
The court at Special Term, New York County, denied defendant’s motion for summary judgment and granted plaintiff’s cross motion to amend the complaint. On appeal, the Appellate Division reversed, one Justice dissenting, and granted defendant’s motion for summary judgment dismissing the complaint.
We are called upon to determine whether a married man, awaiting the dissolution of a prior marriage, may maintain an action to recover an engagement ring given in contemplation of a subsequent marriage to one fully aware of his present incapacity to contract a second marriage. The majority, by its *403 decision herein, would answer the question in the negative. I firmly disagree and would reinstate the order of Special Term denying summary judgment.
Insofar as the case involves the right of a man, already married, to secure the return of an engagement ring from a woman whom he agreed to marry, the case is one of first impression in this State. Although the specific question may be novel, well-established principles of law guide our efforts to secure a just result. Justice, however, is cognizant of more than merely the equities subsisting between particular litigants. Indeed, it contemplates that general social interests be preserved and implemented. What seems totally unjust when limited to individual litigants may well assume an entirely different perspective when viewed from the vantage of social interests at large. The ideal, therefore, is to accommodate both, that is, to forsake equity in a particular case only when to accord it recognition would be to do violence to the recognized public policy of this State. That, it would seem, is what the majority attempts to accomplish by its decision here. Any other conclusion would require that the majority’s action be construed as precluding all suits to recover property transferred solely in consideration of a contemplated marriage which eventually fails to occur. This is obviously in direct contravention of section 80-b of the Civil Rights Law (L. 1965, ch. 333, § 2), which provides that nothing in the statute shall be construed to bar a right of action to recover property transferred solely in consideration of a contemplated marriage, and is clearly not the predicate of the court’s action today. By affirming, herein, the majority would seem to recognize that a different result is compelled where one of the parties is married, regardless of the fact that the donee, fully aware of former’s marital status is unjustly enriched. Not even our once compelling interest in the preservation of the family would warrant such an unconscionable result; especially where as here, plaintiff’s right to the ring neither advances nor impedes the policy of this State favoring the preservation of marriages. To hold that the plaintiff is not entitled to maintain an action to recover the ring, therefore, irrespective of whether any legitimate policy of this State would in fact be vindicated, would be to chastize him for what amounts, *404 at most, to a personal indiscretion and I know of no semblance of authority which admits of such a function.
Likewise, assuming that the majority’s action today is predicated upon public policy considerations, I think it well to note that the majority overlooks the legislative policy of this State, as expressed in section 80-a of the Civil Bights Law, which seeks, by barring “breach of promise suits ”, to protect against the high incidence of unjust enrichment, often the product of feminine wiles (see Goldstein v. Rosenthal, 56 Misc 2d 311).
Section 80-b of the Civil Bights law, relating to gifts for contemplation of marriage, reflects a similar concern. While this court has yet to construe that provision, it seems apparent that section 80-b, upon which the plaintiff, in part, relies, does not create a new cause of action (Goldstein v. Rosenthal, supra), but merely removes the impediment which, for a time, had prevented a man from suing for the return of a ring which he allegedly delivered to a defendant as a pledge or token of a mutual agreement to marry (see, e.g., Josephson v. Dry Dock Sav. Inst., 292 N. Y. 666). Generally, an engagement ring “ is in the nature of a pledge for the contract of marriage ” (Beck v. Cohen, 237 App. Div. 729, 730) and, under the common law it was settled that where the donee broke the engagement she was required, upon demand, to return the ring to her suitor on the theory that it constituted a conditional gift (see, e.g., Wilson v. Riggs, 267 N. Y. 570, affg. 243 App. Div. 33; Beck v. Cohen, supra; Goldstein v. Rosenthal, supra).
It is true that a contract to marry where one of the parties is already married is void as against public policy (Haviland v. Halstead, 34 N. Y. 643, 645) and the courts rightfully will not aid either of the parties to such a transaction. Such, however, is not the present case. As Justice Timer noted below ‘‘While the plaintiff’s contract to marry may be contrary to public policy, his conduct in that regard is unrelated to the subject of the present litigation, the restitution of property given on a condition which the defendant was unwilling to fulfill ” (32 A D 2d 269, 272, dissenting opn.). He seeks neither to enforce such a contract or to obtain damages for its breach; but merely asks to recover from the defendant a gift conditioned upon their ultimate marriage.
*405 Moreover, plaintiff’s cause of action in restitution is not barred by the doctrine of ‘ ‘ unclean hands, ’ ’ as that doctrine has been limited to misconduct which relates to the very subject matter of the present litigation. It does not obtain merely because the present controversy grew out of a separate illegal transaction. The party asserting the defense must have been injured by the wrongful conduct of the other in connection with the very matter about which the complaint is made. As we held in National Distillers Corp. v. Seyopp Corp. “ [The doctrine of unclean hands] is never used unless the plaintiff is guilty of immoral, unconscionable conduct and even then only ‘ when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct * * *'" (17 N Y 2d 12, 15-16; see, also, Weiss v. Mayflower Doughnut Corp., 1 N Y 2d 310, 316; see, also, Furman v. Krauss, 287 N. Y. 852, denying mot. for lv. to app., 262 App. Div. 1016, affg. 175 Misc. 1018; Brooks v. Martin, 2 Wall [69 U. S.] 70; 2 Pomeroy, Equity Jurisprudence [5th ed., 1941], § 399, pp. 97-99).
In the present case, the plaintiff’s action in restitution was not brought to enforce an illegal contract or to further an illegal relation. The agreement to marry was at an end and the action simply attempts to prevent the defendant’s unjust enrichment. The illegal contract to marry relates only indirectly and remotely to the relief sought, it is a thing of the past and is collateral. The plaintiff vis-a-vis the defendant is guilty of no wrongdoing; he simply seeks the return of what is rightfully his. The court would not be sanctioning the illegal act of a married man in becoming engaged to a third party. That engagment is at an end and the return of the ring would in no way revive or foster the former plan. Indeed, it only points the ,way to the restoration of the status quo ante. As it stands, by allowing the defendant to retain the ring the court is placing its imprimatur upon her unjust conduct in retaining the ring or even, subject to the plaintiff’s proof—of her unconscionable act of inducing the gift without dny intention of consummating the marriage. In so doing, it is sanctioning the use of an equitable doctrine, ‘ ‘ where * * * the consequences of its application would be to produce a result which is contrary to good conscience and public policy *406 and would to a greater extent offend them.” (Furman v. Krauss, 175 Misc., supra, at p. 1021.)
Accordingly, I would reverse and reinstate the order of Special Term.
Judges Burke, Breitel and Gibson concur with Chief Judge Fuld; Judge Scileppi dissents and votes to reverse in a separate opinion in which Judges Bergan and Jasen concur.
Order affirmed.