UNITED STATES, Appellee

v

JAMES H. AMIE, Private E–1, U. S. Army, Appellant

7 USCMA 514, 22 CMR 304

No. 8708

Decided January 18, 1957

*First Lieutenant Gerald G. Barton* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel James M. Scott* and *Major Edward Fenig.*

*Captain Thomas J. Nichols* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant William K. Davenport.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted by general court-martial for absence without leave, a violation of Article 86, Uniform Code of Military Justice, 10 USC § 886; larceny of $10.00, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921; and forgery by alteration of a United States Money Order Purchaser's Receipt, a violation of Article 123, Uniform Code of Military Justice, 10 USC § 923. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for one year. The findings and sentence were approved by the convening authority. An Army board of review dismissed the forgery charge. The remaining findings of guilty and the sentence were approved with the exception of the confinement at hard labor which was reduced to nine months. The accused petitioned this Court alleging the following errors:

1. The law officer committed prejudicial error in failing to instruct the court *sua sponte* that the accused's inability to return to duty is a defense to the charge of absence without leave.

2. The law officer erred in failing to instruct the court on the affirmative defenses as to Charge II.

Documentary evidence was introduced to prove a five-day unauthorized absence. The accused testified that at the expiration of an authorized pass he was ill. He was unable to consult with a Dr. Harris, but managed to see Dr. Harris' brother-in-law, who dispensed pills and recommended rest for a few days. Because of the advice, he remained home for about four days— spending about one-half of that time in bed—before surrendering himself to military authorities in Cleveland, Ohio.

The larceny charge facts are: Private Walker gave the accused $80.00 with the understanding that the latter would purchase a United States Postal Money Order and forward the money to an automobile company as payment of two installments owed by Walker on an automobile. The accused purchased a money order in the sum of $70.00, but he gave Walker an altered receipt which showed the amount of money forwarded as $80.00. Walker admitted on the stand that he had from time to time borrowed money from the accused and presently owed him about $2.00, but he denied that he had authorized the accused to retain any portion of the $80.00 as repayment of the indebtedness.

The accused admitted receiving $80.00 from Walker and sending only $70.00 to the Motor Company. He testified that he withheld $10.00 because of an express agreement with Walker that he do so as liquidation of Walker's indebtedness to him. In addition he also wrote an explanatory letter to the automobile company announcing that Walker was forwarding $70.00 as payment. He denied making a statement that the money order purchased and forwarded by him was in the amount of $80.00, and he further denied that he had changed the money order receipt from $70.00 to $80.00.

At the conclusion of the law officer's instructions on presumption of innocence, reasonable doubt, and burden of proof, he asked counsel if he had any objection to the instructions as given or if he had any suggested instructions. The defense counsel requested an instruction which was given by the law officer. At the conclusion of this instruction, the law officer again inquired as to whether or not the defense counsel was satisfied with the instructions as given. The latter replied, "The defense desires no additional instructions

**516**

and the defense is satisfied with the instructions as given."

The defense contends that in view of the testimony of the accused that he was ill, the law officer should have instructed *sua sponte* on the issue of inability to return as a defense to unauthorized absence.

Paragraph 165, Manual for Courts-Martial, United States, 1951, provides that:

". . . Where, however, a man on authorized leave is unable to return at the expiration thereof through no fault of his own, he has not committed the offense of absence without leave, there being an excuse for the absence in such a case."

The accused testified here that the reason he did not proceed to his duty station was because he was ill. According to the accused, "I was returning home on pass from Camp Perry prior to returning back to Fort Knox. While at home, I got ill and was unable to travel. I had already reported down at the MP station for a TR back to Fort Knox, but after I got ill, the TR, it expired. When I got well enough to travel, I went down and turned in again, trying to get another TR, and they sent me down by military escort." The accused went to the doctor and was given some pills and was informed that "it would be best if I rested for a while before returning back." He was sick four days, bedridden about one-half of that time. The law officer did not instruct the court with respect to the accused's defense of inability to return.

In United States v Ginn, 1 USCMA 453, 4 CMR 45, the Court stated:

". . . [W]e think . . . that the court is insufficiently informed as to the 'law of the case' without legal explanation of these defenses, where properly raised.

. . . . . . .

"The law officer is required by statute, as already noted, to instruct the court as to the elements of the offense. We have mentioned, supra, the decision in which we have held that this requires instruction on the elements of lesser included offenses fairly raised by the evidence. We are persuaded that, since the duty to instruct on self-defense must spring from the same source as, and is directly related to, the duty to instruct on lesser included offenses, the same test should apply in each instance."

In United States v Heims, 3 USCMA 418, 12 CMR 174, the Court was called upon to consider the defense of physical incapacity to obey the lawful order of a superior officer. A majority of the Court declared:

"We now direct our attention to the question of whether the law officer here was required—in the absence of specific request—to furnish the court with appropriate instructions on the affirmative defense of physical incapacity. Assimilating the present problem to our treatment of others involving affirmative defenses and related matters, we do not hesitate to say that such instructions are required *sua sponte* where the presence of physical incapacity is fairly raised by the evidence. United States v Ginn, 1 USCMA 453, 4 CMR 45, decided July 10, 1952; United States v Miller, 2 USCMA 194, 7 CMR 70, decided February 13, 1953."

A Navy board of review considered the problem now confronting this Court in United States v Phillips [NCM 279], 14 CMR 472. In that case, it was stated:

"The prosecution's evidence established the unauthorized absence. The accused testified—and he was corroborated by other testimony—that he was physically unable to return to his unit on time because he was stricken with a 'spell' of a re-occurring illness. Thus the accused's testimony presented an issue—an affirmative defense to unauthorized absence —which, if it created in the mind of the court a reasonable doubt as to his physical ability to return to his unit on time, entitled him to an acquittal. It was the duty of the President of the court to clearly and fully instruct the court on this point of law."

The Government urges that the testi-

mony of the accused was insufficient to raise an issue of physical inability to return. In our view, for us to accept that position would be analogous to our ruling that a motion by trial counsel below to strike this testimony as irrelevant would have been proper as a matter of law, or that the prosecution could have requested the law officer to instruct the court that this testimony could not be considered as a defense to an unauthorized absence offense. We are not prepared to go that far. An accused is entitled to have presented instructions relating to any defense theory for which there is any foundation in the evidence. United States v O'Connor, 237 F2d 466, 474 (CA2d Cir) (1956). Accord, Stevenson v United States, 162 US 313, 16 S Ct 839, 40 L ed 980. We cannot conclude as a matter of law that the defense of physical incapacity was not raised in this case. The law officer should therefore have instructed on this defense and his omission to do so was prejudicial error.

As for the defense's argument that the law officer erred in failing to instruct the court properly on the affirmative defenses as to Charge II, it is noted that the defense counsel at the trial requested instructions on mistake of fact. However, under the circumstances of the case that defense was not applicable. Next—for the first time on appeal—appellate counsel contend that the law officer should have instructed the court with respect to the legal aspects of larceny by false pretenses; i.e., that if the accused obtained payment of a liquidated debt by false pretenses, he was not guilty of larceny. However, the entire thrust of the accused's defense was not that he obtained payment of a pre-existing debt by false pretenses, but rather that Walker had given him specific authority to withhold the $10.00. An instruction on obtaining money in payment of a debt by false pretenses would have been inconsistent with the defense's theory and under those circumstances, no instruction was required. This is clear from the following testimony:

"Q. If he had not told you to take the $10.00, would you have taken it anyway?

"A. [Accused] No, sir, I wouldn't do a thing that way. If he couldn't pay me then, I would just let it run and count on it the next time because I had waited four or five months, I think, then."

The law officer instructed the court on the elements of the offense and gave the additional requested defense instruction on mistake of fact. Clearly the law officer should not have granted the defense request for the mistake of fact instruction. But the defense "are not in a position to object to an instruction given at their request." Bianchi v United States, 219 F2d 182 (CA 8th Cir) (1955).

The sole issue in the larceny charge was whether the accused retained the $10.00 he claimed due him, with Walker's permission. The trial court heard the conflicting evidence on the issue, the lengthy arguments of counsel as to who was telling the truth, and was then specifically instructed by the law officer that in order to convict the accused they must find that he withheld the sum in question without authority and with the intent to permanently deprive the owner thereof. The court determined the issue adversely to the accused. And there was evidence of record upon which the court could base such a finding. The court-martial found the accused altered the money order receipt which he gave to the victim. He attempted to conceal the fact that he had taken the $10.00 by stating to Sergeant Walls that he had sent the entire $80.00 to the car company. There was a dispute between the accused and Walker as to the amount of money which the latter owed. Walker testified that it was only $2.00, while the accused testified that he had loaned Walker divers sums of money on several occasions and at the time Walker gave him the $80.00, "I told him that $10.00 would be all right, all our debts would be straight." From the facts, we cannot hold that the decision of the court is not supported by the evidence.

The decision of the board of review as

to the violation of Article 86 is reversed and the case is returned to The Judge Advocate General of the Army for return to the board of review for reconsideration of the sentence or for such other disposition not inconsistent herewith.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring):

I concur.

I have grave doubts that an issue was reasonably raised in this case as to whether accused failed to ■■■■■ ■ return to his unit because he was physically unable to do so, for assuming everything he states to be true, there is really very little to indicate that his illness was one which rendered him unable to travel in accordance with the transportation schedule arranged for him by the military police. However, the doubt must be resolved in favor of the accused, and the issue is one which could easily have been met by the Government.

Among the accompanying papers may be found a certificate executed by Captain De Veau, the captain of military police with whom the accused dealt in Cleveland, Ohio. This certificate contained a number of facts which would have aided the prosecution, but I will mention only one. It is revealed therein that the accused, at the time he turned himself in, claimed he had been ill and had received medical treatment from a Dr. Harris in Cleveland, Ohio. At that time, the story was checked and demonstrated to be false in certain vital particulars. No doubt the check made by Captain De Veau led to the change the accused made in his story when he finally took the stand, but of more significance here is that the Captain's statement clearly put the Government on notice, some $2\frac{1}{2}$ months prior to trial, that the accused would, in all probability, assert a defense of physical infirmity before the court-martial. Nothing appears to have been done to meet the contention which could have been anticipated, and the prosecution seems to have been content to rely on the morning report. Under these circumstances, I feel this Court should not labor to surmount a major difficulty which could have been obviated at trial and which now bars the path to an affirmance.