**68**

UNITED STATES, Appellee,

v.

Glenn N. SMITH, Private First Class, U. S. Army, Appellant.

No. 40286.
SPCM 14931.

U. S. Court of Military Appeals.

Sept. 7, 1982.

For Appellant: *Captain Gary D. Gray* (argued); *Colonel Edward S. Adamkewicz, Jr., Major James F. Nagle* (on brief); *Lieutenant Colonel John F. Lymburner, Major Grifton E. Carden, Captain John D. Martin.*

For Appellee: *Captain Mark S. Julius* (argued); *Colonel R. R. Boller, Major Ted B. Borek, Major John T. Meixell, Captain Robert D. Higginbotham* (on brief).

## OPINION OF THE COURT

COOK, Judge:

Appellant was charged with a single specification of robbery, a violation of Article 122, Uniform Code of Military Justice, 10 U.S.C. § 922, and he pleaded guilty.[1] During the providence inquiry, appellant explained to the military judge that his friend, Private Webber, owed him $10. According to appellant, Webber told him that PFC Powell owed Webber $20 and that if appellant could get $10 from Powell, appellant could have it. Appellant went to Powell and asked for the $10, but Powell told him to come back later. Appellant then went to the club and "got a little tipsy." He came back to Powell's room and again asked for the money. This time, Powell said he did not have the money. An argument ensued; appellant pulled out a knife and threatened Powell. Ultimately, Powell borrowed some money from Private Cuevas, and either Cuevas or Powell (it varies in appellant's account) handed appellant the money.

At trial, appellant admitted that he had no right to the money from Powell. However, appellant maintained that, at the time he took the money, he thought he had a right to it. The following colloquy is illustrative:

---

1. His approved sentence extends to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $250 pay per month for 3 months, and reduction to E–1.

MJ: Now when you took that property from Private First Class Powell's hand, are you satisfied that you had no legal right to do that?

ACC: Sir, I realize that now.

MJ: And at the time you took it, was it in your mind that you would never return it to either one of those individuals? That you were taking it to spend it and that was the end of it?

ACC: Yes, sir. Because I felt Webber owed it to me, and he told me where I could get it and I went and got it, and that's all it was.

Again, during pre-sentencing, appellant explained: "I thought that that was my money owed to me." At no time did appellant retreat from this position. Appellant now contends that because of this his plea was improvident. We agree.

■ Larceny is a component of robbery and must be proved at trial. Para. 201, Manual for Courts-Martial, United States, 1969 (Revised edition). Article 122 denounces robbery in the following terms:

Any person subject to this chapter who *with intent to steal* takes anything of value from the person or in the presence of another, against his will, by means of force or violence or fear of immediate or future injury to his person or property or to the person or property of a relative or member of his family or of anyone in his company at the time of the robbery, is guilty of robbery and shall be punished as a court-martial may direct.

(Emphasis added). The larceny statute, Article 121, UCMJ, 10 U.S.C. § 921, provides in pertinent part:

(a) Any person subject to this chapter who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind—

(1) with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, steals that property and is guilty of larceny.

Wharton defines robbery thusly:

To constitute robbery, the property must be taken with animus furandi, i.e., with the intent permanently to deprive another of his property. This mental state is commonly described as the *intent to steal.* [Cf. Article 122, UCMJ, *supra.*]

The intent must exist at the time the property is taken....

A defendant is not guilty of robbery when he forcibly takes his own property from another, as where he uses force to recover his property from the thief who originally took it from him. Nor is a defendant guilty of robbery when he forcibly takes the property of another under the good-faith belief that it is his own property.

4 Wharton's Criminal Law, Robbery, § 470 (14th ed. 1981) (footnotes omitted). *See also* 88 A.L.R.3d 1316, § 4. In addition, paragraph 200a(4), Manual, *supra,* states: "[A] taking or withholding of property from the possession of another ... is not wrongful ... if done by a person who has a right to the possession of the property either equal to or greater than the right of the one from whose possession he takes, obtains, or withholds it."

In our previous opinions, we have twice had occasion to comment on whether a claim of right to the property taken can defeat a charge of robbery. In *United States v. Kachougian,* 7 U.S.C.M.A. 150, 21 C.M.R. 276 (1956), the accused therein was charged with attempted robbery and felony murder. The evidence indicated that one of Kachougian's friends was trying to "roll" some Korean pimps to get back some of the money that had been stolen from the friend several days earlier "by some Korean Pimps." *Id.* at 155, 21 C.M.R. at 281. While the friend was relieving the Koreans of their valuables, Kachougian's weapon discharged, killing one of the Koreans. On appeal, Kachougian contended that the law officer erred in failing to instruct on forms of homicide less than felony murder. His theory was that the killing did not occur during the course of an attempted robbery

since he was only seeking to recover money which he believed had been taken from his friend. We accepted the "general principle of law, that a person is not guilty of robbery in forcibly taking property from the person of another, if he does so under a bona fide belief that he is the owner of such property, or is assisting an owner," citing *People v. Rosen*, 11 Cal.2d 147, 78 P.2d 727 (1938). 7 U.S.C.M.A. at 156, 21 C.M.R. at 282. Nevertheless, the facts of the case persuaded us that the rule was inapplicable therein because Kachougian did not honestly believe he was helping his friend recapture his own property. *Id.* at 158, 21 C.M.R. at 284.

In *United States v. Petrie*, 1 M.J. 332 (C.M.A.1976), a quantity of hashish had been stolen from the accused's desk drawer. The accused became convinced that a certain person had stolen the drugs. He went to the victim's room, accompanied by friends; slapped the victim several times; and removed $178 from the victim's wallet. The majority of the Court restated the *Kachougian* rule, providing this rationale:

[A] person who takes property from another under an honest belief that the property is his own or that he is entitled to its possession—that is, with the sincere belief that he has a right of claim to that property—is doing so without the specific intent to deprive the other person wholly and permanently of property to which that other person has a superior right of possession. In short, the requisite intent to steal is absent.

1 M.J. at 334 (footnote omitted). However, the majority found that Petrie could not avail himself of the *Kachougian* rule on the grounds that he had no right to retrieve the contraband or "property taken in lieu thereof." *Id.*

The Government here strongly urges us to modify our rule, noting that a number of jurisdictions have rejected the claim-of-right defense to robbery. Thus, in *State v. Ortiz*, 124 N.J.Super. 189, 305 A.2d 800 (1973), the defendant was convicted of armed robbery, and he contended that he was attempting to collect a debt. The court rejected the claim-of-right defense, stating:

In our view, the proposition not only is lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence. Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied. We reject it out of hand.

*Id.* 305 A.2d at 802 (footnote omitted). *See also Moyers v. State*, 186 Ga. 446, 197 S.E. 846 (1938); 88 A.L.R.3d 1313, § 3.

We, however, reject this rationale for several reasons. First, robbery is a compound offense combining larceny and assault. *United States v. Chambers*, 12 M.J. 443, 446 (C.M.A.1982); *United States v. Calhoun*, 5 U.S.C.M.A. 428, 18 C.M.R. 52 (1955); para. 201, Manual, *supra*. Thus,

if the evidence fails to prove the larceny, the accused may be found guilty of some degree of assault, including assault consummated by a battery, assault with a dangerous weapon, assault in which grievous bodily harm is intentionally inflicted, or assault with intent to commit robbery.

Para. 201, Manual, *supra*. Society, then, is not without means to punish breaches of the peace where the larceny aspect of robbery is absent. Further, the outright rejection of the claim-of-right defense sweeps too broadly: if A steals property from B, and B recovers the property over A's physical resistance, B is guilty of robbery, under the Government's theory, though A is only guilty of larceny. We detect no evidence that Congress intended such a result under the present Code. Therefore, we adhere to the *Kachougian* rule.

In the instant case, of course, appellant was not seeking to collect a debt owed him directly by Powell. Nevertheless, there is little doubt that Webber could assign his right to receive $10 from Powell to appellant. *See* Simpson, *Contracts* § 127 (2d ed. 1965); 6 Am.Jur.2d, Assignments § 16. Naturally, the right to assign a debt is not unlimited. *See, e.g.,* 6 Am.Jur.2d, Assign-

ments §§ 16 and 22. However, there is no indication in this record that Powell's obligation to Webber was in any way restricted.

■ In any event, whether or not appellant was actually entitled to the property is beside the point because appellant's insistence that he only intended to acquire his own property was inconsistent with a plea of guilty to robbery and rendered his plea improvident. *See* Article 45(a), UCMJ, 10 U.S.C. § 845(a); *United States v. Bethke*, 13 M.J. 71 (C.M.A.1982); *United States v. Logan*, 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973). Therefore, we must inquire whether there were any lesser offenses to which appellant providently pleaded guilty.

Certainly on these facts, it might have been possible for the Government to charge appellant with aggravated assault. How-

ever, due to the manner in which the case arose, the military judge did not outline, nor did appellant admit to having committed, the elements of aggravated assault. The only offense fairly included within the charge [2] of robbery to which appellant providently pleaded guilty was simple assault, in violation of Article 128, UCMJ, 10 U.S.C. § 928. Accordingly, the decision of the United States Army Court of Military Review is reversed. The record of trial is remanded to The Judge Advocate General of the Army for submission to a convening authority, who may either order a rehearing or may approve findings of guilty of simple assault and reassess the sentence correspondingly.

Chief Judge EVERETT and Judge FLETCHER concur.

---

**2.** Specification: In that Private First Class Glenn N. Smith, US Army, B Battery, 1st Battalion 83rd Field Artillery, did, at H.D. Smith Barracks, Baumholder, Federal Republic of Germany, a military installation under the control of the US Army, on or about 6 January 1980, by means of force, steal from the presence of Private First Class Timothy A. Powell, US Army, against his will, ten (10) dollars ($10.00), the property of Private E–2 David Cuevas, US Army. Said offense occurring outside the territorial limits of the United States and not being cognizable in a US civilian court.