UNITED STATES, Appellee

v.

Troy D. GUNTER, Private First
Class, U.S. Army, Appellant.

No. 93–1522.
CMR No. 9300014.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 14, 1994.

Decided Aug. 23, 1995.

For Appellant: *Captain Walter R. Dukes* (argued); *Colonel Stephen D. Smith, Major Fran W. Walterhouse, Captain Alison L. Becker, Captain Michael A. Egan* (on brief); *Lieutenant Colonel James H. Weise* and *Captain Michael E. Smith.*

For Appellee: *Captain Eugene E. Baime* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel James L. Pohl, Major Kenneth T. Grant, Captain Jane F. Polcen* (on brief); *Colonel John M. Smith.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. Appellant was tried by a general court-martial composed of a military judge sitting alone at Fort Stewart, Georgia, on January 6, 1993. Pursuant to his pleas he was found guilty of stealing checks and cash from two soldiers (2 specifications each); wrongfully appropriating a stereo from one of these soldiers; forgery of some of the stolen checks (2 specifications); violating a general regulation; and unauthorized absence, in violation of Articles 121, 123, 92, and 86, Uniform Code of Military Justice, 10 USC §§ 921, 923, 892, and 886, respectively. He was sentenced to a dishonorable discharge, confinement for 28 months, total forfeitures, and reduction to E-1. On March 10, 1993, the convening authority approved the adjudged sentence, except for confinement exceeding 8 months, in accordance with a pretrial agreement. The Court of Military Review[1] affirmed this action on June 29, 1993. 37 MJ 781.

2. On December 1, 1993, this Court granted review on the following issue of law raised by appellate defense counsel:

WHETHER THE MILITARY JUDGE ERRED BY ACCEPTING APPELLANT'S PLEAS OF GUILTY TO SPECIFICATIONS ONE THROUGH FOUR OF CHARGE I (LARCENY), SPECIFICATION FIVE OF CHARGE I (WRONGFUL APPROPRIATION), AND THE SPECIFICATIONS OF CHARGE II (FORGERY), BECAUSE THE PROVIDENCE INQUIRY RAISED INCONSISTENT MATTERS AND THE POSSIBLE DEFENSE OF SELF-HELP, WHICH THE MILITARY JUDGE FAILED TO ADEQUATELY RESOLVE.

We hold as a matter of military law that, at the time of appellant's offense, a servicemember creditor had no legal right to seize his debtor's property without the agreement of that debtor. *See United States v. Smith,* 14 MJ 68 (CMA 1982) *United States v. Amie,* 7 USCMA 514, 22 CMR 304 (1957); *United States v. Smith,* 2 USCMA 312, 8 CMR 112 (1953). Accordingly, we conclude that the military judge did not err in accepting appellant's pleas of guilty to larceny and wrongful appropriation on this basis, and did not fail to adequately question appellant about any other possible defenses to the charged offenses. *See generally United States v. Timmins,* 21 USCMA 475, 478–79, 45 CMR 249, 252–53 (1972).

3. Appellant was charged with and pleaded guilty to, *inter alia,* the following offenses:

CHARGE I: VIOLATION OF THE UCMJ ARTICLE 121 [2]

SPECIFICATION 1: ... on or about 1 January 1992 and 31 March 1992 steal

---

1. *See* 41 MJ 213, 219 n. * (1994).

2. § 921. Art. 121. Larceny and wrongful appropriation
   (a) Any person subject to this chapter who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind—
   (1) with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, steals that property and is guilty of larceny; or
   (2) with intent temporarily to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, is guilty of wrongful appropriation.
   (b) Any person found guilty of larceny or wrongful appropriation shall be punished as a court-martial may direct.

*checks* numbered 1036, 1042, 1078, 1092, and 1100 belonging to David L. Wesley, said checks having some value.

SPECIFICATION 2: ... on or about 1 January 1992 and 31 March 1992 steal *money* belonging to David L. Wesley in the amount of $595.00.

SPECIFICATION 3: ... on or about 1 April 1992 and 15 April 1992 steal *a check* number 139, belonging to Christopher S. Haltom, said check having some value.

SPECIFICATION 4: ... on or about 1 April 1992 and 15 April 1992 steal *money* belonging to Christopher S. Haltom in the amount of $200.00.

SPECIFICATION 5: ... on or about 31 July 1992 wrongfully appropriate a Blaupunkt AM/FM car stereo belonging to Christopher S. Haltom of a value of $230.00.

CHARGE II: VIOLATION OF THE UCMJ ARTICLE 123

SPECIFICATION 1: ... on or about 1 January 1992 and 31 March 1992, with intent to defraud, falsely make, in its entirety, the signature of David L. Wesley to checks numbered 1036, 1042, 1078, 1092, 1100 of the said David L. Wesley, which said checks, if genuine, would operate to the legal harm of David L. Wesley.

SPECIFICATION 2: ... on or about 15 April 1992, with intent to defraud, falsely make, in its entirety, the signature of Christopher S. Haltom to check 139 of the said Christopher S. Haltom, which said check, if genuine, would operate to the harm of Christopher S. Haltom.

(Emphasis added.)

4. The Court of Military Review noted the following facts concerning appellant's offenses:

   The appellant admitted taking five blank checks from Private E2 (PV2) W's checkbook and one blank check from Private First Class (PFC) H's checkbook and a car stereo belonging to PFC H without each owner's permission. With respect to PV2 W, the appellant forged PV2 W's signature to the five blank checks and cashed them in various amounts for a total of $595.00. The appellant also forged PFC H's signature to the single blank check and cashed it for $200.00. The stereo was valued at $230.00. The appellant indicated that the reason he took the checks and stereo was because PV2 W owed him "roughly" $595.00 and PFC H owed him approximately $369.00. The stipulation of fact indicated that both sides agreed that PFC H owed the appellant some money. It was silent on whether PV2 W owed the appellant any money. In his unsworn statement during the sentencing phase of trial, the appellant again reiterated that both PV2 W and PFC H owed him "some money."

37 MJ at 782.

5. Appellant before this Court asserts that his guilty pleas to larceny, forgery, and wrongful appropriation should be set aside. He asserts that the providence inquiry raised "two possible defenses .... mistake of fact and self help," Final Brief at 5, but neither one was adequately explained or ruled out by the military judge.

6. The heart of appellant's claim is that his guilty pleas to larceny, forgery, and wrongful appropriation should be set aside because the military judge failed to conduct an adequate providence inquiry. *See generally United States v. Prater*, 32 MJ 433 (CMA 1991). He argues that the record of trial shows that the alleged victims of these offenses, Private Wesley and Private First Class Haltom, owed him roughly the same amount of money as what he allegedly stole from them. Citing early decisions of this Court, he further contends that the military judge failed to ensure that the defense of "self help" and the defense of "claim of right" did not exist in his case.[3]

---

3. We reject outright the suggestion of appellant that these defenses in the context of the present case could be applied to the forgery specifications. *United States v. Smith*, 14 MJ 68, 70 (CMA 1982); *United States v. Smith*, 2 USCMA 312, 314, 8 CMR 112, 114 (1953). *See Jupiter v. State*, 328 Md. 635, 616 A.2d 412, 416–18 (1992) (excellent discussion of claim-of-right defense in context of a robbery charge); *People v. Reid*, 69

■ 7. Turning first to appellant's argument on his purported right to self help,[4] we find it unsupported as a matter of law and fact. He suggests that the mere existence of debts of the alleged victims to him under our case law authorized him [appellant] to take this property from the possession of the owner or a third person to satisfy those debts. *See United States v. Petrie*, 1 MJ 332, 334 n. 4 (CMA 1976); *United States v. Eggleton*, 22 USCMA 503, 505, 47 CMR 920, 922 (1973). In other words, he contends that a taking of property by him in these circumstances was "rightful," not wrongful, as a matter of law. *See United States v. Smith*, 2 USCMA at 313, 8 CMR at 113; para. 46c(1)(d), Part IV, Manual for Courts–Martial, United States, 1984. *Cf.* W. LaFave and A. Scott, *Substantive Criminal Law* (hereinafter LaFave & Scott) § 8.4(c) at 355–56 (1986) (not property of another for purposes of larceny statute). *See also* § 223.2 Comment 7, ALI Model Penal Code, *reprinted in* ALI *Model Penal Code and Commentaries* (hereafter Commentaries) (Part II) at 177 (1985). This argument we must reject.

■ 8. It is a general rule of law that the mere fact a person is indebted to another does not give a creditor the right to seize the debtor's property in payment of or as security for the debt. *See* 52A CJS Larceny § 26b and 50 AmJur2d, Larceny §§ 36 and 41 (cited as authority for doctrine of self-help in *United States v. Eggleton*, 22 USCMA at 504, 47 CMR at 921). Nevertheless, our past case law has recognized that a limited right of self-help might exist for a servicemember to seize another's property in order to satisfy a debt or acquire security for it. *Id.* *But see United States v. Main*, 598 F.2d 1086, 1090–91 (7th Cir.), *cert. denied*, 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311 (1979). However, the facts of our cases suggest that such a right must be based on an agreement between the parties providing for the satisfaction or the security of the debt in this fashion. *See United States v. Smith*, 14 MJ at 70–71; *United States v. Smith*, 2 USCMA at 313, 8 CMR at 113; *cf. United States v. Amie*, 7 USCMA 514, 22 CMR 304. *See generally* § 223.2 Comment 4, *Commentaries, supra* (Part II) (defines theft as appropriating a property interest beyond parties' agreement).

■ 9. Here appellant admitted that his taking of his debtors' money and property was wrongful. Moreover, he conceded that the checks, cash, and car stereo were not items previously owned by him or wrongfully taken from him. Finally, the guilty plea inquiry in this case makes clear that neither Private Wesley nor Private First Class Haltom at any time gave appellant authority or permission to collect their debts by taking their checks, forging and cashing them, or taking his car radio. Accordingly, our precedent did not require that appellant's pleas of guilty be found improvident on the basis of his purported right to self-help.

10. Appellant's second argument is that the military judge failed to adequately explain and rule out a defense based on an honest claim of right to help himself to the property of his debtors. *See United States v.*

---

N.Y.2d 469, 515 N.Y.S.2d 750, 751–53, 508 N.E.2d 661, 663–64 (1987).

**4.** The decisions of this Court in *United States v. Kastner*, 17 MJ 11 (1983), and *United States v. Johnson*, 17 MJ 140 (1984), have been generally cited for the proposition that motive for a taking is irrelevant in a larceny case. *See United States v. Martin*, 37 MJ 546, 549 (NMCMR 1993). However, the author judge of our decisions clearly indicated that such a proposition could not be literally applied in all cases. Judge Cook stated in *Kastner:*

> Necessarily, the definition of "motive" must exclude recognized defenses such as necessity and self-defense if our statement that it is irrelevant is to be literally correct. Similarly, "motive"

may be relevant in certain instances such as trials based upon circumstantial evidence where presence of a "motive" may lead the jury to convict, and absence of any "motive" may be a circumstance pointing to innocence of the crime charged. *See generally* LaFave and Scott, *Criminal Law* § 29 (1972).

17 MJ at 13 n. 3 (emphasis added).

The right to self-help is "based upon the common law and rooted in the concept of self-defense." *United States v. Main*, 598 F.2d 1086, 1091 (7th Cir.), *cert. denied*, 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311 (1979). *Cf. People v. Reid*, 69 N.Y.2d 469, 515 N.Y.S.2d 750, 752–53, 508 N.E.2d 661, 664 (1987) (right limited by statute to nonforceable taking).

*Petrie,* 1 MJ at 334 n. 4; *United States v. Eggleton, supra* at 505, 47 CMR at 922. Again, he notes the admitted facts concerning the existence of debts owed by the alleged victims to him and his acknowledged intention to satisfy these debts or secure collateral for them. He contends that these facts suggest that he *honestly, albeit mistakenly, believed* that he had an ownership interest in the allegedly stolen goods or a legal right to recapture them. We again disagree.[5] *See generally State v. Quisenberry,* 639 S.W.2d 579, 584 n. 14 (Mo. banc 1982); *cf. State v. Varszegi,* 33 Conn.App. 368, 635 A.2d 816, 819–20 (1993).

▮ 11. This Court in several decisions has, at least implicitly, recognized that a defense may exist to a larceny charge where a soldier takes property from another *honestly believing* that he has a superior claim of right to that specific property. *United States v. Smith,* 14 MJ at 70 (a monetary debt); *United States v. Petrie,* 1 MJ at 334 (stolen property); *United States v. Eggleton,* 22 USCMA 503, 47 CMR 920 (a monetary debt); *United States v. Dosal–Maldonado,* 12 USCMA 442, 31 CMR 28 (1961)(gambling losses); *United States v. Kachougian,* 7 USCMA 150, 21 CMR 276 (1956) (stolen money). We note that recognition of this traditional defense to the *mens rea* or specific-intent element of larceny has become increasingly disfavored in American courts.[6] *See* LaFave and Scott, *supra,* § 8.5(d) at 363–64; Annot., 88 ALR 3d 1309 (1978) ("Robbery, Attempted Robbery, or Assault to Commit Robbery, as Affected by Intent to Collect or Secure Debt or Claim"). *See also* § 223.1(3) Comment 4(b), *Commentaries, supra* (Part II) at 155–57 (an affirmative defense of honest claim of right urged where no specific intent required by statute for larceny

offense). In any event, we have defined a sincere claim of right to such property as "an honest belief that the property is his own or that he is entitled to its possession." *United States v. Petrie,* 1 MJ at 334.

▮ 12. The military judge in this case repeatedly questioned appellant about the stolen property and his belief concerning its ownership. *See generally United States v. Leslie,* 13 MJ 170, 172 (CMA 1982). There is no indication in the record that appellant believed that he owned the checks, cash, or car stereo, or that they were wrongfully taken from him. He admitted that these items were owned by the other soldiers and that they gave him no authority to take them. Furthermore, he agreed that his taking of this property was wrongful even though he asserted that the owners of this property owed him money. Thus, there simply was no basis in this record for the military judge to conclude that appellant *honestly believed* that either he owned this property or that he had any superior "legal interest" in it. *See State v. Hicks,* 102 Wash.2d 182, 683 P.2d 186 (1984) (money taken thought to be specific money stolen day before).

13. The military judge during this guilty-plea inquiry also asked appellant whether he *honestly believed* that he was entitled to take possession of the alleged stolen property as satisfaction or security for debts owed him. The record states:

> MJ: I told you concerning this larceny and wrongful appropriation that a taking and a withholding is wrongful only if it is done without the consent of the owner. So you've satisfied that aspect of it because you told me that Wesley gave you no permission, correct?
>
> ACC: Yes, sir.

---

5. Appellant terms this defense a mistake of fact. This description of the defense of claim of right we find inappropriate as appellant's mistake, if any, pertained to his legal right to seize the property (*see State v. Varszegi,* 33 Conn.App. 368, 635 A.2d 816, 818 (1993)), not any factual mistake as to the owner. *See United States v. Turner,* 27 MJ 217 (CMA 1988).

6. The claim-of-right defense has been recognized in Federal and state courts as a valid defense to a

charge of larceny. *See Richardson v. United States,* 403 F.2d 574 (D.C.Cir.1968); *Townsend v. United States,* 549 A.2d 724, 727 n. 6 (D.C.App. 1988); *Smith v. United States,* 330 A.2d 519, 521 (D.C.App.1974). *But see State v. Winston,* 170 W.Va. 555, 295 S.E.2d 46 (1982) (characterizing *Richardson v. United States, supra,* as single exception to holdings rejecting the defense to robbery).

MJ: And the other part of it is that it has to be done with a criminal state of mind and that's where I need to make you aware that if you thought that you had a right to take those checks and that money and go ahead and cash those checks or whatever to get the money that he owed you, then it's possible that you would not be found guilty of the offense of stealing the money. Do you understand that?

ACC: Yes, sir.

MJ: What I'm telling you, if you believe you had a right to take those checks, make his signature on those checks and to cash those checks and receive money from his bank account, then you have what's in the law called a mistake of fact defense. Do you understand that?

ACC: Yes, sir.

MJ: Did you believe that at the time you did all this that you were entitled to do what you were doing; take his checks, to sign his name to his checks without any authorization, and then to cash those checks and to receive his money?

ACC: No, sir.

14. Moreover, later it states:

MJ: And he gave you no permission to take the $200.00 which you received from that check, is that true?

ACC: Yes, sir.

MJ: Did you know at the time you were doing all of this that it was wrong to be doing that?

ACC: Yes, sir.

MJ: Again, I want to tell you if you believe that you had a right to do what you did, to take his money to help recover the debt that he owed you, then you could have a defense to these offenses. Do you understand that?

ACC: Yes, sir.

MJ: Did you in fact believe you had a right to do what you were doing?

ACC: No, sir.

Clearly the military judge's inquiry in this regard was adequate, and appellant expressly disavowed any honest claim of legal right to the stolen property or its possession.[7]  *Cf. United States v. Smith*, 14 MJ at 71 (appellant insisted that he only intended to acquire his own money *as acknowledged by debtor* ).

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and CRAWFORD concur.

GIERKE, Judge (concurring in part and in the result):

15.  I agree with the majority's conclusion that appellant disavowed any claim of right or honest belief that he was entitled to the stolen property.  Accordingly, I join the majority's holding that the military judge properly accepted appellant's pleas of guilty.

16.  I decline to join in what appears to be an advisory opinion regarding honest mistake of fact and claim of right as applied to larceny cases.  We should not entertain appellant's post-trial arguments about a possible defense that he expressly declined to assert at trial.  We need not decide the validity of a defense which was not asserted.  The mere theoretical possibility that a defense existed does not render the plea improvident.  *See United States v. Clark*, 28 MJ 401, 407 (CMA 1989) (mere possibility of a defense does not render guilty plea improvident).

WISS, Judge (concurring in part and dissenting in part):

17.  The majority opinion separately discusses what it considers to be two related but distinct concepts:  right of self-help to obtain property and a claim of right to possession of

---

**7.**  The claim-of-right defense has traditionally included a requirement that the taking also be done in the open.  *See Commonwealth v. White*, 5 Mass.App.Ct. 483, 363 N.E.2d 1365, 1368 (1977).  *See generally* 50 Am Jur 2d, Larceny § 41 at 49–50.  *But see* § 223.1 Comment 4(b), ALI Model Penal Code, *reprinted* in ALI *Model Penal Code and Commentaries* (Part II) at 155 (1985).  Appellant's responses make clear that he would not qualify for this defense because his taking of the checks, money and car stereo were all done surreptitiously without the knowledge of the owners or their rightful possessors.  *Cf. United States v. Eggleton*, 22 USCMA 503, 47 CMR 920 (1973) (suggests in dicta that defense exists without mentioning openness requirement or requirement that debtor agree to taking).

certain property. *But see United States v. Eggleton,* 22 USCMA 503, 505 n.2, 47 CMR 920, 922 n.2 (1973) (referring to "the doctrine of self-help based on a claim of right"); *but cf. United States v. Petrie,* 1 MJ 332, 334 and n. 4 (CMA 1976) (person does not have intent to steal when "he has a [claim of] right to that property" either because he owns the property or because he believes that he has a right to its possession and that his right is superior to that of the other person). As well, a third—mistake of fact—was intermixed with one or both of these two concepts by the military judge (I am unsure which, given the confused and confusing state of the exchange between the judge and appellant) under facts in which mistake of fact is irrelevant.

18. I cannot fully join the majority opinion because, in my view, it does not give full faith and credit to this Court's precedent. Regardless of the language used, my reading of the cases in this precedent is as follows: First, when an accused takes money from someone who, for whatever reason, owes the accused money, he does not have the requisite intent to steal because he merely is retrieving his own property; thus, until today, this Court has treated money as fungible property, without regard to the particular bills of currency. *See, e.g., United States v. Smith,* 14 MJ 68 (CMA 1982); *United States v. Dosal–Maldonado,* 12 USCMA 442, 31 CMR 28 (1961); *United States v. Kachougian,* 7 USCMA 150, 21 CMR 276 (1956). Second, when an accused takes personal property from someone because that person owes the accused money, similarly the intent to steal is missing because the accused merely was helping himself to security for a bona fide debt; an intent to steal would exist only to the extent that the value of the property exceeded the amount of the debt. *See, e.g., United States v. Eggleton, supra.*[1]

19. Applied to this case, such a theory makes appellant's pleas to specifications 2, 4, and 5 of Charge I improvident. As the Court of Military Review acknowledged in its opinion, 37 MJ 781, 782 (1993), appellant indicated that he took $595.00 cash from Wesley because Wesley owed him "roughly" $595.00 (specification 2). He told the military judge that he "figured [Wesley] didn't want to pay me." Similarly, appellant took $200.00 cash and "wrongfully appropriate[d]" a car stereo worth $230.00 from Haltom because Haltom owed appellant "approximately $369.00" and "absolutely refused to pay" him (specifications 4 and 5, respectively). Appellant asserted, "My intent, sir, was to keep the radio until Christopher S. Haltom repaid me the money he owed me."

20. If this was, indeed, the case, my reading of our precedent persuades me that appellant would not be guilty of either of the alleged larcenies of cash and that his wrongful appropriation would be of property (the car stereo) valued only at $61.00 (debt of $369.00 less cash of $200.00, leaves debt of $169.00; the value of the stereo in excess of that debt is $61.00—*see United States v. Eggleton, supra*). In this light, appellant's responses during the providence inquiry were "in substantial conflict" with his guilty pleas to these three specifications, *see United States v. Stewart,* 29 MJ 92, 93 (CMA 1989); and this conflict is a "substantial basis" for our questioning the providence of the guilty pleas, *see United States v. Prater,* 32 MJ 433, 436 (CMA 1991).

21. I cannot conclude without pausing to address briefly the concept of mistake of fact and how, in certain cases, that defense might fit into all of this. As the colloquy quoted in the majority opinion points out, the military judge advised appellant that, *"if you believe you had a right* to take those checks, make his signature on those checks and to cash those checks and receive money from his bank account, *then you have what's in the law called a mistake of fact defense."* ¶13 (emphasis added). I do not agree with this advice because it confuses mistake of fact (which might be a defense under some circumstances, *see infra* ) with mistake of law

---

1. Our precedent quite clearly treats these concepts as going to an element of the offense of larceny—that is, the requisite intent to steal. Accordingly, I do not agree with Judge Gierke's assertion that all of this merely concerned a "possible defense that he expressly declined to assert at trial." ¶15 (Gierke, J., concurring in part and in the result).

(which generally does not constitute a defense [2]).

22. RCM 916(j), Manual for Courts–Martial, United States, 1984, defines the mistake-of-fact defense as arising when "the accused held, as a result of ignorance or mistake, *an incorrect belief of the true circumstances* such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense." (Emphasis added.) Thus, the defense might arise in connection with the *factual basis* upon which an accused believes he has a lawful right of self-help or a claim of right to certain property. It does not arise, however, from an accused's erroneous belief that, based on certain facts, he has a legal right to take certain action.

23. So, a defense might present itself, for instance, if an accused believed that the tangible property that he retrieved was his, when in fact it was not; or if an accused was in error for some reason in believing that the other person owed him anything at all. *See United States v. Smith, supra* ¶ 17; *United States v. Greenfeather*, 13 USCMA 151, 156, 32 CMR 151, 156 (1962); *United States v. Kachougian, supra.* *See also United States v. Turner*, 27 MJ 217 (CMA 1988) (mistake of fact arises when accused received stolen car engines from someone whom accused erroneously believed possessed them lawfully).

Under such circumstances, to the extent that our jurisprudence would recognize a right of self-help or a claim of right at all, *see* opinion, *supra*, a mistake of fact becomes relevant to whether such a right applies.

24. To be clear, then, I believe that there is no mistake of *fact* in issue in this case: Accepting appellant's contentions, he knew that Wesley and Haltom each owed him money; that neither owed him checks *qua* checks; and that the stereo in question belonged to Haltom, not appellant. Further, he knew that the amount owed him by Wesley was roughly $595.00 and that the amount of money he took from Wesley's bank account was $595.00; and he knew that the amount of money owed him by Haltom was $369.00 and that the total value of money and property that he took from Haltom was $430.00—$200.00 cash and a stereo valued at $230.00.

25. Those are the facts, and there was no mistake about any of them. Accordingly, any discussion in this context of mistake of fact is not pertinent. *See generally United States v. Amie*, 7 USCMA 514, 518, 22 CMR 304, 308 (1957) (A contention that "the accused obtained payment of a liquidated debt by false pretenses" does not raise a mistake of fact.).

---

2. "Ignorance of the law excuses no man; not that all men know the law, but because 'tis an excuse every man will plead, and no man can tell how to refute him." John Selden, "Law," *Table Talk* (1689). Similarly: "Ignorance of the law is not excuse in any country. If it were, the laws would lose their effect, because it can always be pretended." Thomas Jefferson to M. Limozin, December 22, 1787, *quoted* in *The Quotable Lawyer* 64.2 (Selden) and 64.4 (Jefferson) at 133 (1986).