**UNITED STATES**

v.

**James E. VANDYKE, Jr., Airman (E–3), U.S. Navy.**

**NMCM 9901500.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 24 Feb. 1999.

Decided 26 March 2002.

---

Charleston, South Carolina and Miramar, California; and the proceedings were being conducted in Great Lakes, Illinois.

Wayne E. Anderson, Civilian Defense Counsel.

Maj Charles C. Hale, USMC, Appellate Defense Counsel.

LCDR Joann W. Melesky, JAGC, USNR, Appellate Government Counsel.

LT James E. Grimes, JAGC, USNR, Appellate Government Counsel.

Before ANDERSON, Senior Judge, VILLEMEZ, and BRYANT, Appellate Military Judges.

ANDERSON, Senior Judge:

Following mixed pleas, the appellant was found guilty of four specifications of unauthorized absence, three specifications of making false official statements, and one specification of larceny in violation of Articles 86, 107, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 907, and 921. A panel of officer and enlisted members, sitting as a special court-martial, sentenced him to confinement for 3 months, forfeiture of $639 pay per month for 3 months, reduction to pay grade E–1, a fine of $500 with a fine-enforcement provision, and a bad-conduct discharge. The convening authority approved the sentence as adjudged, but suspended the fine.

After carefully considering the record of trial, the appellant's assignments of error, the Government's response, and the appellant's reply, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

In the course of his ship, USS NIMITZ (CVN 68), executing a change of homeport move, the appellant requested and received advance travel pay for himself and his wife to execute permanent change of station (PCS) orders from Bremerton, Washington to Newport News, Virginia. After the appellant

moved his household goods to Virginia, he returned to Bremerton and deployed aboard USS NIMITZ. The deployment terminated at the ship's new Virginia homeport. Several weeks later, the appellant and a fellow Sailor leased an apartment in Newport News. He then completed three official documents in conjunction with his move, a Variable Housing Allowance (VHA) certificate, a Record of Emergency Data (RED) form, and a PCS travel claim. In both the VHA certificate and the RED form, the appellant certified that his wife was living with him at his apartment in Newport News. In the PCS travel claim, the appellant certified that his wife had accompanied him during the move.

In fact, the appellant's wife never moved to Newport News. Prior to the deployment, she and the appellant began having marital difficulties. As a result, she moved out of their Bremerton apartment, asked for a divorce, and returned her wedding ring.

At trial, the appellant pleaded guilty to stealing a portion of the advance travel pay that was intended to compensate him for his wife's move (dependent per diem). He pleaded not guilty to, but was found guilty of, making false official statements on his VHA certificate, RED form, and PCS travel claim.

### Husband–Wife Privilege

■ In his first and second assignments of error, the appellant argues that the testimony of his wife was protected by the husband-wife privilege and its admission was plain error. We find no such protection and no plain error.

■ At trial, the appellant did not object to his wife's testimony. Consequently, any existing husband-wife privilege was waived in the absence of plain error. RULE FOR COURTS-MARTIAL 801(g) and 905(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.); MIL. R. EVID. 103(a) and 103(d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). To prevail under a plain error analysis,

the appellant must persuade this court that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right. *United States v. Finster,* 51 M.J. 185, 187 (1999); *United States v. Powell,* 49 M.J. 460, 463–65 (1998); *United States v. Fisher,* 21 M.J. 327, 328 (C.M.A.1986). After reviewing the entire record, we find no error.

■ Under the confidential interspousal communications privilege, "[a]n individual may forever block disclosure of confidential communications made to his spouse during their marriage." STEPHEN A. SALTZBURG, ET AL., MILITARY RULES OF EVIDENCE MANUAL 654 (4th ed.1997).[1] For a communication to be confidential, there must be "(a) physical privacy between the individuals and (b) an intent to maintain secrecy." *United States v. Peterson,* 48 M.J. 81, 82 (1998).[2]

The appellant's wife testified at trial that prior to the appellant's deployment and change of homeport to Newport News, she moved out of their apartment, told him that she wanted a divorce, and returned her wedding ring to him. Later, when her mother and his father were present, she and the appellant discussed the divorce and their finances. The appellant and his father even went to a Navy legal office for advice. During the appellant's deployment, he returned a box of her belongings to her. After the appellant arrived in Newport News, she had several phone conversations with him about the filing of divorce papers and the disposition of their car. They never discussed reconciliation, she never traveled to Virginia, and she never resided in Newport News.

■ After reviewing this testimony, we find initially that the appellant did not have the privilege to prevent his wife from voluntarily disclosing any statements she made to

---

1. *See* MIL. R. EVID. 504(b)(1)("A person has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law.").

2. *See* MIL. R. EVID. 504(b)(2)("A communication is 'confidential' if made privately by any person to the spouse of the person and is not intended to be disclosed to third persons other than those reasonably necessary for transmission of the communication.").

him.[3] "[T]he privilege to prevent disclosure by anyone of confidential communications is held by the spouse who made them." SALTZBURG, ET AL., MILITARY RULES OF EVIDENCE MANUAL 655. The privilege only entitles the appellant to prevent his wife from testifying about any confidential statements he made to her.[4]

Next, we do not find that any confidential communications were revealed by the wife's testimony. First, the communications about the pending divorce did not fall within the confidential privilege because such communications were clearly intended to be transmitted to a third person. *Pereira v. United States,* 347 U.S. 1, 6, 74 S.Ct. 358, 98 L.Ed. 435 (1954). "[W]henever a communication, because of its nature or the circumstances under which it was made, was obviously not intended to be confidential[,] it is not a privileged communication." *Wolfle v. United States,* 291 U.S. 7, 14, 54 S.Ct. 279, 78 L.Ed. 617 (1934).

Second, the communications about the divorce and those about the wife's not residing in Newport News were not confidential because they were revealed to third parties. *See United States v. McElhaney,* 54 M.J. 120, 131 (2000); *Wolfle,* 291 U.S. at 14. "[C]ommunications made in the presence of third parties, or revealed to third parties, are not privileged." *McElhaney,* 54 M.J. at 131. Not only did the appellant's father, his wife's mother, and someone at a Navy legal office know about the couple's marital difficulties, so too did one of the appellant's division officers, an enlisted supervisor, and two enlisted friends. Record at 96–98, 105–07, 113–14, 157, 163, 171–72. Also, the appellant's roommate in Newport News confirmed that the appellant's wife had never resided in their apartment.

Finally, the communications about the return of the wedding ring, the return of

the box of the wife's belongings, and the facts of her not traveling to Virginia or residing in Newport News were not confidential because the privilege generally "does not extend to mere acts." *United States v. Martel,* 19 M.J. 917, 926 (A.C.M.R.1985). *See Pereira,* 347 U.S. at 6, 74 S.Ct. 358. "Any residuum [in the wife's testimony] which may have been intended to be confidential was so slight as to be immaterial." *Pereira,* 347 U.S. at 7, 74 S.Ct. 358. Thus, the husband-wife privilege did not apply, and there was no error.

Even assuming *arguendo* that the admission of any portion of the appellant's wife's testimony could be conceived as error, it was neither plain nor obvious. In addition, any error did not materially prejudice any of the appellant's substantial rights. Even without the testimony of his wife, there was overwhelming evidence of his guilt.

### Ineffective Assistance of Counsel

The appellant next contends that he was denied the effective assistance of counsel because his trial defense counsel failed to assert the husband-wife privilege and failed to recognize a potential defense to the larceny charge. To establish ineffective assistance of counsel, he must meet a two-pronged standard. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, he must show that "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. In this case, we find that he has failed to establish the first prong.

As noted earlier, the husband-wife privilege was inapplicable to the appellant's wife's testimony. Consequently, the trial defense counsel did not err in failing to raise that issue.

With respect to a potential defense to the larceny charge, the appellant argues that he was not guilty of larceny "because he should

---

3. *See* MIL. R. EVID. 504(b)(3)("The privilege may be claimed by the spouse who made the communication or by the other spouse on his or her behalf. The authority of the latter spouse to do so is presumed in the absence of evidence of a waiver. The privilege will *not* prevent disclosure of the communication at the request of the spouse to whom the communication was made if that spouse is an accused regardless of whether the spouse who made the communication objects to its disclosure.").

4. "Many common law cases give the privilege to both spouses, but [Military Rule of Evidence 504] is more limited." SALTZBURG, MILITARY RULES OF EVIDENCE MANUAL 655.

have received more money from the Navy for [basic allowance for] housing (BAH) and separation [dislocation] allowance (DLA) because his wife was still residing in Washington State." Appellant's Brief of 8 Sep 2000 at 15. After reviewing the entire record, we find nothing that indicates the appellant was entitled to any more money because his wife was living in Washington State.

In pleading guilty to the larceny offense, the appellant admitted that he wrongfully withheld advance dependent per diem pay that was intended to compensate him for his wife's prospective move to Newport News. When his wife did not move, he knew he should have returned the advance money, but instead, he made a conscious decision to keep it. He never indicated on the record that he considered himself entitled to this money.

During the merits of the case, the evidence revealed that the appellant received an advance travel payment of $337.50 for dependent per diem and $58.40 for dependent mileage and transportation allowance. In the appellant's liquidated PCS travel claim, the combined amount, $395.90, was reflected as the total amount paid for dependent travel. According to the testimony of a disbursing clerk, the appellant was overpaid that amount, minus one day of per diem ($37.50) that his wife would have been entitled to based on her own move within Washington state, plus mileage at a rate of 2 cents per mile.

The DLA and BAH are not issues. As reflected in the liquidated PCS travel claim, the appellant was paid DLA at the with-dependents rate. This payment was proper because the appellant's wife had moved more than 50 miles within Washington state in conjunction with his change of homeport. In addition, the appellant would not have been entitled to receive any more BAH because his wife stayed in Washington State. He was only entitled to BAH at the with-dependents rate based on his location in Newport News, not on his wife's location in Washington. Department of Defense Financial Management Regulation, Volume 7A, Chapter 26, Table 26-9 (Location Member's BAH Rate Is Based Upon: Members With Dependents) at 26-42 (Interim Ch. 14, 1999). In any event, BAH is a matter separate from a travel claim.

In view of these facts, the appellant has failed to show that he had a viable defense that was ignored by his trial defense counsel. Thus, he "has not met the threshold burden to demonstrate that his trial lawyer's performance was ineffective." *United States v. Ingham*, 42 M.J. 218, 224 (1995).[5]

## Argument by Trial Counsel on Findings

In his next assignment of error, the appellant claims that the trial counsel erred in his argument on findings by impermissibly suggesting that the defense had the burden of proof. We disagree.

During his argument on findings, the trial counsel made the following argument:

Defense counsel promised in his opening that we would hear evidence that would show that the accused really thought that his wife was coming on the 25th of March 1998 when he filled out the page 2 and the VHA certification on 6 April 1998 when he filed the travel claim, that there would be evidence to show that he thought that. Defense didn't deliver. When you go back into the deliberation room, think back as clearly as you can because you are going to

5. In his post-trial affidavit, the appellant asserts, "I did not believe that I was guilty of larceny because I never took anything from the Navy that I wasn't entitled to." Affidavit of James E. Van-Dyke, Jr. of 6 Sep 2000. If he is arguing that a self-help defense was available to him, that defense is inapplicable under the facts of his case. A servicemember has no right to take money from one whom he believes owes him money or property of similar value without an agreement between the parties, and no agreement has been shown. *United States v. Gunter*, 42 M.J. 292, 293-95 (1995). Although "a defense may exist to a larceny charge where a soldier takes property from another *honestly believing* that he has a superior claim of right to that specific property," the appellant did not make such a claim during the providence inquiry. *Gunter*, 42 M.J. at 296. After reviewing the record, we find no substantial basis in law or fact for rejecting his pleas. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991). We will not overturn a guilty plea on the mere possibility of a defense. *United States v. Faircloth*, 45 M.J. 172, 174 (1996). Furthermore, we will not "speculate post-trial as to the existence of facts which might invalidate an appellant's guilty pleas." *United States v. Johnson*, 42 M.J. 443, 445 (1995).

use what you remember not what either of us tell you the facts were. It's what you remember. Think back. Did you hear evidence that would support that?

Record at 190–91. The trial defense counsel made no objection to this argument, and in fact, he responded to it in his argument on findings with the following comments:

> [The trial counsel] was right. In my opening argument, I asked you to focus in on whether he had the intent to deceive.... So, for you to convict Airman VanDyke of these crimes, you have to find that he intended to deceive.... There is tons of evidence and I would argue that I did deliver to show that he did question whether she was going to come out and whether he did intend to deceive at least enough to show there is reasonable doubt.

Record at 193.

 We find no error in the trial counsel's argument. "[I]f a defense counsel contends in an opening statement that the evidence will show [something] and then the evidence in fact is not forthcoming, that remark is fair game for appropriate comment in the prosecutor's closing argument." *United States v. Turner,* 39 M.J. 259, 263 (C.M.A.1994). *See United States v. Young,* 470 U.S. 1, 11–13, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)(discussing the "invited response" rule); *Lawn v. United States,* 355 U.S. 339, 359 n. 15, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *cf. United States v. Webb,* 38 M.J. 62, 65–66 (C.M.A. 1993).

Also, even assuming *arguendo* that there was error, the appellant failed to object to it, and the issue is waived in the absence of plain error. R.C.M. 919(c)("Failure to object to improper argument before the military judge begins to instruct the members on findings shall constitute waiver of the objection."). *See also United States v. Diffoot,* 54 M.J. 149, 151 n. 1 (2000); *United States v. Carpenter,* 51 M.J. 393, 396 (1999). We find no plain error. *See* Art. 59(a), UCMJ; *Powell,* 49 M.J. at 463–65; *Fisher,* 21 M.J. at 328. First, the trial counsel's argument was aimed at attacking the defense theory of the case, not at shifting the burden of proof. Any error, then, was not plain or obvious. Second, the trial defense counsel failed to object to the argument or request a curative instruction, thereby supporting an inference that any error committed was of small consequence. *See United States v. Grandy,* 11 M.J. 270, 275 (C.M.A.1981). Third, the trial defense counsel countered the trial counsel's argument in his own argument by conceding that the trial counsel's reference to his opening statement was correct, but disagreeing with the trial counsel on what the evidence showed. Finally, the military judge carefully instructed the members on the presumption of innocence and the prosecution's burden of proof. We find no material prejudice to the substantial rights of the appellant.

**Sentence Appropriateness**

Finally, the appellant asserts that his sentence is inappropriately severe. After reviewing the entire record, we find that the sentence is appropriate for this offender and his offenses. *See* Art. 59(a) and 66(c), UCMJ; *United States v. Healy,* 26 M.J. 394, 395–96 (C.M.A.1988); *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982).

**Conclusion**

Accordingly, we affirm the findings and sentence as approved on review below.

Judge VILLEMEZ and Judge BRYANT concur.