Harold Tessler, J.
The fundamental question presented to this court in an agreed statement of facts submitted by the parties is: “ Can an engagement ring, given in contemplation of marriage, be recovered from a 1 donee ’, by the estate of the ‘ donor ’, when the contemplated marriage fails to occur because of the death of the ‘ donor The undisputed facts can be summarized as follows: Richard Alan Rothchild became engaged to be married to Carol Sue Cohen, the plaintiff in this action. Both were over 21 years of age. Richard gave Carol a diamond 1 ‘ engagement ” ring which is valued at $1,000. Shortly before the wedding date, Richard was killed in an automobile accident and his estate has instituted this action to recover the ring. The sole question for determination by this court is: “ Who is entitled to the ring? ”
Actions for return of engagement rings have had an interesting and confusing history in New York. These actions were permitted at common law prior to 1935. However, in 1935 the Legislature of this State enacted article 2-A of the Civil Practice Act (the heart balm statute) which was later interpreted by the courts so as to bar actions for the return of engagement rings in most instances. (See Andie v. Kaplan, 288 N. Y. 685; Josephson v. Dry Dock Sav. Inst., 292 N. Y. 666.) These results were widely criticized. (See Note, Return of an Engagement Ring Given by a Married Man, 38 Fordham L. Rev. 359, and Note, Breach of Contract to Marry; Civ. Prac. Act, art. 2-A; Recovery of Antenuptial Gifts, 48 Cornell L. Q. 186.) In response to this criticism, in 1965 the Legislature amended section 80-b of the Civil Rights Law to permit recovery of engagement rings where “ justice so requires.”
In Lowe v. Quinn (32 A D 2d 269) the Appellate Division, First Department, held that the common-law rules formulated before 1935 would again be applicable. The court stated (p. 270): 11 The section does not create a new cause of action. It merely removes the bar which, for a time, had made the rights engendered by the facts unenforcible. This is apparent from the opening words: 1 Nothing in this article contained shall be construed to bar a right of action. ’ Patently the Legislature decreed a rule of construction which was contrary to that currently followed by the courts to give effect to the provisions of another statute. As Judge Asch concluded in a scholarly *740 review of the section: ‘ The new section presumably restores the common-law rules which were in effect prior to the enactment of the anti-heart balm statute. ’ (Goldstein v. Rosenthal, 56 Misc 2d 311, 314.)
‘ ‘ Reference to those common-law rules determines this action.”
However, reference to these common-law rules formulated prior to 1935 is of little help in the present instance since this case appears to be one of first impression in this State. In the absence of any controlling authority, this court has sought help by looking to applicable decisional law in other jurisdictions, the general principles underlying engagement ring cases in general and, finally, to what justice requires in this situation.
An examination of the relevant authorities in other States indicates that they are split. One approach is illustrated in the decision in Urbanus v. Burns (300 Ill. App. 207). In that case, the court denied the donor recovery of an engagement ring and other jewelry he had given his fiancée, whose death had prevented the marriage, and stated (p. 212): “At the time the articles of jewelry were presented, both parties knew that according to the course of nature, either one of them might die before the marriage was consummated. Had Loretta lived and had plaintiff declined to marry her, he could not recover the jewelry or the value thereof. Had he died before they became married, his personal representatives could not recover the jewelry for the benefit of his estate. At the time of her death, Loretta had a right to the possession of the jewelry as against all persons. She did not at any time break the contract to marry plaintiff or refuse to marry him. She was the owner of the jewelry at the time of her death and she did not breach the marriage troth. Hence, plaintiff had no right to claim the recovery of the same as against her brother and sisters or personal representative.” However, a different approach was taken in a Pennsylvania case (Ruehling v. Hornung, 98 Pa. Super. Ct. 535, 540) in which the court stated:
“ We are unwilling to go that far, except as to the engagement ring. Such a ring is given as a pledge or symbol of the contract to marry. We think that it is always given subject to the implied condition that if the marriage does not take place either because of the death, or a disability recognized by the law on the part of, either party, or by breach of the contract by the donee, or its dissolution by mutual consent, the gift shall be returned. It only becomes the absolute property of the recipient if the marriage takes place. Rood sense usually *741 secures the return of the ring. The English cases seem to be in harmony on this question. See Cohen v. Sellar, 1 K. B. 536 (1926); and Jacobs v. Davis, 1 K. B. 532 (1917).” (See Ann. Return of Engagement Gifts, 24 ALR 2d 579, 598.)
Nor does an examination of the principles underlying the gift of engagement ring cases in general clearly point the way to a particular result. The results set forth in the decisions in gift of engagement ring cases are usually predictable and understandable. However, the legal principles and rationales relied upon by the courts are often divergent and muddled. For example, it is settled that where a fiancee breaks an engagement without the fault of the donor, she must return the ring. (Beck v. Cohen, 237 App. Div. 729.) It is also well settled that where the donor breaks the engagement, the ring may be kept by the donee (Beer v. Hart, 153 Misc. 277) and, generally, where the engagement is broken by mutual consent, the ring also goes back to the donor (Wilson v. Riggs, 243 App. Div. 33, affd. 267 N. Y. 570.)
While these results are equitable, the various legal theories asserted are not always logical and persuasive. Some courts have propounded a pledge theory. (See Jacobs v. Davis, 2 K. B. 532 [1917].) Other courts state that principles of unjust enrichment govern (see Zawadzki v. Vandetti, 255 App. Div. 932) and the most popular rationale is that the ring is given as a gift on condition subsequent. (Beck v. Cohen, supra.) It is not always clear, however, whether it is the actual marriage of the parties or the donee’s not performing any act that would prevent the marriage that is the actual condition of the ‘1 transaction ’ ’.
Thus, a confusing body of law has grown up around the engagement ring and, after careful consideration of these principles, this court has decided that Carol should keep the ring because that result is equitable and because 11 justice so requires ’ ’ for the following reasons: WThile the engagement ring to some people in the “mod” world of today is just another material possession and while it has not been unknown in some circles for recipients of these rings to flaunt them, to compare their luster, number of carats, etc., with the rings of their friends, for the vast majority the ring still remains a hallowed symbol of the love and devotion that a prospective husband and wife bear for each other. In my judgment, no gift given during a lifetime can approach the meaningfulness and significance of the engagement ring. When Richard gave the ring to Carol, he obviously intended that she have it and *742 keep it .unless she affirmatively did something to prevent the marriage of the parties. While it is improbable that at the time of the gift either gave a thought to the consequences that would arise in the event of the death of one of the parties, I firmly believe that had Richard thought of these consequences he would have intended that in the event of his untimely death Carol should keep the ring as a symbol of his love and affection. There appears to be no reason, in logic or morals to prevent such a result.
This court frankly acknowledges that implicit in this determination is a recognition that the gift of an engagement ring is a special occasion interwoven with romance and mutual love. It is a meaningful act symbolic of much more than the ordinary and usual business transaction. I am convinced that it is time for a change in our approach to this area. The traditional approach of applying the sound and settled principles of business law and the law of gifts to the giving of an engagement ring has resulted in a myriad of decisional law in this area, which is to say the least, in much confusion and determinative of little.
I cannot believe that the age-old ritual of giving an engagement ring to bind the mutual premarital vows can be or is intended to be treated as an exchange of consideration as practiced in the everyday market place. Can it be seriously urged that the giving of this ring by the decedent ‘ ‘ groom ’ ’ to his loved one and bride-to-be can be treated as the ordinary commercial or business transaction requiring the ultimate in consideration and payment? I think not. To treat this special and usually once in a lifetime occasion, one as requiring quid pro quo, is a mistake and unrealistic.
Accordingly the ring shall remain with Carol and judgment shall be entered accordingly.