UNITED STATES, Appellant,

v.

Michael S. KASTNER, Specialist Four,
U.S. Army, Appellee.

No. 45,591.

CM 442176.

U.S. Court of Military Appeals.

Dec. 5, 1983.

For Appellee: *Captain William T. Wilson* (argued); *Major Robert C. Rhodes, Captain Warren G. Foote, Captain Rita Carroll* (on brief).

For Appellant: *Captain David T. Ralston, Jr.* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Patrick M. Flachs, Captain Michael E. Pfau* (on brief); *Captain Thomas E. Booth.*

*Opinion of the Court*

COOK, Judge:

The accused, a military policeman, was charged with conspiracy to break into three storage bunkers with the intent to commit larceny of government property; dereliction of duty on two occasions; larceny of government property on two occasions; and housebreaking into three storage bunkers, in violation of Articles 81, 92, 121, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, 921, and 930, respectively. Pursuant to his pleas, he was convicted, as charged, except for the substitution of "wrongfully appropriate" for "steal," and "wrongful appropriation" for "larceny," wherever charged. The court-martial sentenced the accused to be discharged from the service with a dishonorable discharge; confined at hard labor for 5 years; forfeit all pay and allowances; and reduced to the pay grade of E–1. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge; confinement at hard labor for 15 months; for-

feiture of all pay and allowances; and reduction to E–1.

In an unpublished memorandum opinion, the United States Army Court of Military Review[1] set aside the findings of guilty of conspiracy, wrongful appropriation, and housebreaking on the ground that accused's pleas of guilty were improvident. The court stated:

Appellant stated that his reason for taking the ammunition was to "show a lack of security measures" at the storage facility. Appellant's statement amounts to an assertion of innocence which, under the Court of Military Appeals' decision in *United States v. Roark,* 12 U.S.C.M.A. 478, 31 C.M.R. 64 (1961), would, if believed, constitute a defense to the aforenamed charges.

The Judge Advocate General of the Army requested that action under Article 67, UCMJ, 10 U.S.C. § 867, be taken as to the following issue:

WHETHER THE DECISION IN *UNITED STATES V. ROARK,* 12 U.S.C.M.A. 478, 31 C.M.R. 64 (1961), THAT AN ACCUSED'S INNOCENT PURPOSE IS AN AFFIRMATIVE DEFENSE TO VIOLATIONS OF ARTICLE 121, UNIFORM CODE OF MILITARY JUSTICE, SHOULD BE OVERRULED, AND, THEREFORE, THE DECISION OF THE ARMY COURT OF MILITARY REVIEW BE REVERSED AS TO BOTH THE FINDINGS WHICH WERE SET ASIDE AND THE SENTENCE WHICH WAS SET ASIDE BY THAT COURT.

The "evidence" in this guilty-plea case consists only of the accused's responses during the providence inquiry and a stipulation of fact concerning the offenses. Together, these disclose that during the early morning hours of October 28, 1981, the accused, who was assigned as a security guard at Fischbach Army Depot in Germany, and several other guards decided to break into an ammunition storage bunker and remove some of the weapons and ordnance stored inside. They took some 35 detonation fuses and left them under some leaves about one mile from the bunker. The same evening, again while assigned as security guards, accused and several other guards agreed to break into another bunker and did so; however, not finding the sort of ordnance they wanted, they broke into yet another bunker and removed 100 tear gas grenades, and two light, anti-tank weapons. They hid these items in another part of the depot. After going off duty for that shift, the accused guarded the place where the equipment was hidden while his cohorts returned to the bunker and took 100 more grenades, which they secreted in the same place as the first 100 grenades. The accused contended that the purpose for breaking into the bunkers and taking the equipment was to demonstrate the lack of security at the depot. The stipulation of fact "ostensibly" supports his statement. After findings, the accused made an unsworn statement to the same effect.

The "evidence" presented by the accused—if believed[2]—raises the so-called "innocent purpose" defense enunciated in *United States v. Roark,* 12 U.S.C.M.A. 478, 479, 31 C.M.R. 64, 65 (1961). Roark was convicted of stealing money from a friend and barracks' mate. He contended that he only took the money to teach the victim a lesson about securing his valuables. "[T]he Board of Review found that the accused took ... [the] money not with the intent to deprive ... [the victim] permanently of it, but 'to teach his friend a lesson.'" But, the Board "concluded ... that ... 'motivation' was 'of little significance in determining ... [accused's] guilt of the lesser offense,' and, ... affirmed findings of guilty of wrongful appropriation." *Id.* at 479, 31 C.M.R. 65. One dissenting member felt the finding of fact established a total lack of

---

1. The decision of the Court of Military Review and GCMO 14 incorrectly reflect the accused's middle initial; it should be "S" instead of "E."

2. The accused's description of the efforts and equipment necessary to breach the locks securing the bunkers indicates that security was not totally lacking. Of course, had he been performing his duties as a guard, such acts presumably would have been much more difficult to accomplish.

criminal intent. We reversed the Board of Review decision on the ground that the Board's finding of fact negated the requisite criminal intent necessary for a violation of Article 121. We stated:

> Not every taking of property without the consent of the owner constitutes a violation of Article 121 of the Uniform Code. Additionally, there must be an accompanying criminal intent either to deprive the owner permanently of the property taken, which is larceny, or the intent to deprive him temporarily of the property, which is wrongful appropriation. [Citations omitted.] If the intent accompanying the taking is neither of those specified, the taking may be wrongful, but does not constitute a violation of Article 121. [Citation omitted.] Here, the board of review found the accused's intention was to teach his friend a lesson. *That is a wholly innocent purpose,* not a criminal or evil one. Accused's disclaimer of any criminal intent is a "total defense" to a prosecution under Article 121, and, since believed by the board of review, entitles the accused to a finding of not guilty of both larceny and wrongful appropriation.

*Id.* (Emphasis added).

In equating "a wholly innocent purpose" with an absence of criminal intent, we exemplified the difficulty in applying the ancient maxim, *Actus non facit reum, nisi mens sit rea* (The act itself does not make the actor guilty, unless the mind is guilty),[3] 3 Coke, Institutes 107, for motive is not a substantive element of any crime recognized by the common law. *See* Clark & Marshall, *A Treatise on the Law of Crimes* 263 (7th ed. 1967). "A bad motive does not make an otherwise innocent act criminal. Conversely, a good or laudable motive does not make an otherwise criminal act innocent." 1 Wharton's Criminal Law 408 (C. Torcia, 14th ed. 1978) (footnotes omitted). It is the intent, not the motive, that determines the criminality of the act. "Intention is a determination to act in a certain way; motive is that which incites and stimulates the formation of the intention. There is no distinction of greater importance in the criminal law." Clark & Marshall, *supra* at 263 (footnote omitted). Thus, "a man may commit a crime without intending to do wrong, or even when believing he is doing right so far as his own conscience is concerned." 1 Burdick, *The Law of Crime* 153 (1946). The doctrine of "innocent purpose" is a misnomer when applied in such a situation. There is no doubt that at the time of the taking the accused intended to temporarily deprive the victim of his property. That he did so for what he considered a laudatory motive is not a "total defense," since such a proposition, if followed strictly, would make the accused the determiner of whether his act was lawful or not. The correct test is objective, not subjective: Is the accused's conduct, objectively viewed, a violation of established law? Thus, the killing of a bad man with the intention of benefiting the community

---

**3.** 1 Burdick, *The Law of Crime* 153–54 (1946), states:

> Were *"reum"* and *"rea"* in the maxim *Actus non facit reum, nisi mens sit rea,* translated, in the Roman Law sense, "answerable," or "responsible," thus making it read, an act does not make one responsible (in criminal law) unless his state of mind (at the time) is also responsible, we should then state a proposition that is, indeed, true in our law, but to translate it, as usually translated, that one is not guilty of crime unless one's mind is also guilty, in the sense of an intent to do wrong, or with a mind conscious of guilt, or, as more frequently expressed, "with guilty mind," or "guilty knowledge," is, on the other hand, to state as a legal proposition something which is not true.

Perhaps the confusion may also stem from concepts of moral wrong as contrasted to legal guilt; the former involves motive sometimes exclusively, *cf.* Matthew 5:28, while the latter requires an act done voluntarily or willingly, i.e., intentionally, in a legal sense. Necessarily, the definition of "motive" must exclude recognized defenses such as necessity and self-defense if our statement that it is irrelevant is to be literally correct. Similarly, "motive" may be relevant in certain instances such as trials based upon circumstantial evidence where presence of a "motive" may lead the jury to convict, and absence of any "motive" may be a circumstance pointing to innocence of the crime charged. *See generally* LaFave and Scott, *Criminal Law* § 29 (1972).

is not a defense to unlawful homicide, though it may well be a factor in mitigation. *See* 1 Wharton's, *supra* at 408. When Roark surreptitiously took his friend's money from his locker, it was a wrongful taking, and he admittedly intended to deprive the victim of the money at least for a period of time. That he did the act as "a joke" or to "teach him a lesson" (12 U.S.C.M.A. at 478, 479, 31 C.M.R. 64, 65) serves only to explain his own subjective state of mind and does not negate the intention to commit the crime of wrongful appropriation. His motivation was best left to matters in mitigation and extenuation of the offense.

*United States v. Roark, supra,* also ignored our earlier decision in *United States v. McCoy,* 5 U.S.C.M.A. 246, 17 C.M.R. 246 (1954). There, the accused pleaded guilty to stealing a wallet containing military payment certificates, but testified "that he kept the wallet" "as more or less a joke." *Id.* at 247, 248 n. 1, 17 C.M.R. at 247, 248 n. 1. We found no inconsistency between the pleas of guilty and the accused's post-findings statement and stated:

His testimony does not at all negate the wrongfulness of the act charged against him. The claim by the accused that he was merely seeking to "teach . . . [the owner] a lesson" constitutes no sort of justification—for neither precedent nor social policy has been called to our attention which favors this type of "instruction." Indeed, the harmful consequences which might well result from according judicial approbation to this "educational" technique are portended by the very circumstance that here the owner ultimately lost his wallet—although he

was fortunate enough to regain the contents thereof.

\* \* \* \* \* \*

[T]he accused's act held but slight prospect of producing good for anyone, and it certainly extended the discomfort of the disturbed owner of the wallet.[2]

What psychological "gain" he received from his misconduct, we cannot know—but it is plain that the owner of the goods suffered a legally cognizable harm or injury, in that he lost the use of that property. Under the circumstances of the present case, this is all that is required to sustain findings of guilty to a charge of wrongful appropriation.

---

[2] If the law were as the accused believes it to be, he would go scot-free for all his "joke." On the other hand, one like Hugo's Jean Valjean, who took bread to feed a starving family, might be prosecuted successfully for larceny. *Cf.* Burdick, Law of Crime, 1946 ed, § 551, page 321.

*Id.* at 248–49, 17 C.M.R. at 248–49.

Our decision in *United States v. McCoy, supra,* was not cited in *United States v. Roark, supra,* and it is the latter decision that generally has been followed. *See United States v. O'Hara,* 14 U.S.C.M.A. 167, 33 C.M.R. 379 (1963); *United States v. Hardesty,* 1 M.J. 780 (A.F.C.M.R.1976); *United States v. Brooks,* 43 C.M.R. 945 (A.F.C.M.R.), *rev'd,* 21 U.S.C.M.A. 3, 44 C.M.R. 57 (1971).[4] We believe that *United States v. Roark, supra,* was incorrectly decided and should no longer be followed. We, instead, prefer to reaffirm our rationale in *United States v. McCoy, supra.*

In this case, the accused pleaded guilty to wrongfully appropriating the specified items of government property. He admitted the intentional wrongful taking and

---

4. The Air Force Board of Review recognized the omission of the decision in *United States v. McCoy,* 5 U.S.C.M.A. 246, 17 C.M.R. 246 (1954), from the decision in *United States v. Roark,* 12 U.S.C.M.A. 478, 31 C.M.R. 64 (1961). In *United States v. Stinson,* 35 C.M.R. 711 (A.F.B.R.), *pet. denied,* 15 U.S.C.M.A. 672, 35 C.M.R. 478 (1964), the accused claimed that he took the victim's hubcaps as "an April Fools' Day joke." *Id.* at 713. The Board of Review, though disbelieving the story, was concerned

with the questions of whether the accused's testimony made his pleas improvident and whether it required an instruction (accused, having pleaded guilty to wrongful appropriation, but not guilty to larceny, was convicted of larceny). The Board found these facts different from *United States v. Roark, supra,* in that the purpose of the taking was not "wholly innocent," since the taking and withholding of the hubcaps would cause "discomfiture, worry, and other reactions of the owner." *Id.* at 715.

withholding of them. That he knew the criminality of his conduct is evident from his descriptions of the secretness of the planning, the tools necessary to secure ingress, and the removal and hiding of the stolen items. His explanation of his motive does not affect the providence of his pleas. Since motive is not an element of wrongful appropriation, there was nothing inconsistent in his responses and his pleas were properly accepted.

The certified question is answered in the affirmative. The decision of the United States Army Court of Military Review is reversed and the record of trial is returned to the Judge Advocate General of the Army for resubmission to the court below for further proceedings pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

Chief Judge EVERETT and Judge FLETCHER concur.