UNITED STATES, Appellee,

v.

First Lieutenant Kier D. JACKSON, United States Army, Appellant.

ARMY 9700166.

U.S. Army Court of Criminal Appeals.

15 July 1999.

For Appellant: Captain Donald P. Chisholm, JA (argued); Colonel John T. Phelps II, JA; Colonel Adele H. Odegard, JA; Major Holly S.G. Coffey, JA; Captain T. Michael Guiffre, JA (on brief); Captain Kirsten V. Campbell–Brunson, JA.

For Appellee: Captain Kelly R. Bailey, JA (argued); Major Michael J. Klausner, JA (on brief); Captain Mary E. Braisted, JA.

Before SQUIRES, Senior Judge, ECKER, and TRANT, Appellate Military Judges.

## OPINION OF THE COURT

ECKER, Judge:

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of making a false official statement, larceny, conduct unbecoming an officer, adultery, fraternization, wrongful interference with an adverse administrative proceeding and unlawful entry, in violation of Articles 107, 121, 133, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 921, 933 and 934. His approved sentence included a dismissal, confinement for one year and forfeiture of all pay and allowances.

Appellant asserts personally and through counsel, eight errors. Among those claims, two concern the larceny conviction (Charge II). First, he asserts the military judge erred in denying his requested instructions; and second, that the evidence at trial was factually insufficient. We have considered the record of trial, briefs and oral arguments of counsel, and agree with these two claims.

### FACTS

While assigned to the 10th Mountain Division at Fort Drum, New York, appellant, who was married but separated and living apart from his spouse, became sexually involved with three women: a civilian, a staff sergeant (SSG) and a corporal (CPL). The three liaisons overlapped somewhat, but his involvement with the SSG was the most involved and lasted the longest.

The SSG was also married and separated from her spouse but, unlike appellant, had

initiated divorce proceedings. Because of her desire to avoid repeating a painful entanglement, she rebuffed his initial approaches. Nevertheless, after a persistent, brief and intense pursuit, appellant proposed marriage and tendered an engagement ring. Unaware of appellant's marriage, the SSG ultimately accepted both the proposal and the ring. Appellant then immediately took the ring back and replaced it with one sporting a larger stone, because, as he explained to her, the first ring "wasn't big enough or befitting enough for a 'Mrs. Jackson.' "

During their "engagement," appellant moved much of his household furniture, from its place of storage, into the SSG's on-post quarters. Many of these items were gifts, donations or heirlooms from family members. Appellant moved the SSG's furniture into her garage and started using her quarters.

Appellant also bought a rug and additional furniture for the SSG to complete or compliment the décor. This redecorating was done in order to project a better image as he and the SSG moved into a long-term relationship. Finally, he provided her with one of two exercise bicycles he had in storage, so she could physically prepare for a military course she was to attend.

When appellant's philandering surfaced, the long-term phase of the relationship became shorter than planned. This occurred in two stages. First, the SSG discovered and met appellant's civilian love interest, and realized appellant had "two timed" her. She immediately broke off with appellant and returned the engagement ring. However, appellant ultimately induced her to ignore the evidence, re-accept his ring and resume the engagement.

Shortly after getting back together, appellant deployed with his unit on an exercise. When rumors of appellant's involvement with the CPL filtered back to the SSG, she again broke off the engagement. This time, despite his best efforts, she maintained her resolve. She also made it clear that appellant was not to come to her office again, set foot in her home, or try to call or see her.

Not surprisingly, the parties possessed differing views concerning ownership of most of the property appellant had placed in the SSG's possession. The SSG regarded all of it as unconditional gifts because, as she testified, appellant had never said otherwise. Appellant, on the other hand, asked that she return the ring and the items he had taken out of storage. He explained that, in his view, these possessions were either loaned to the SSG or they were conditional gifts. The SSG refused appellant's request, and implied that the property had been, or would soon be, disposed of or destroyed.

Faced with these circumstances, appellant resorted to self-help. He rented a U–Haul truck and along with the solicited assistance of a private first class (PFC) under his command, unlawfully entered the SSG's quarters. They removed the disputed furniture, exercise bike and engagement ring. Appellant and the PFC returned the furniture stored in the garage to the quarters, and arranged it with the rug and furniture items appellant had purchased. After departing her quarters, appellant affixed a note to the windshield of the SSG's car informing her of what he had done.

### CLAIM OF RIGHT

During preparation of instructions for the members, appellant's defense counsel requested the military judge include the special defenses of mistake of fact and claim of right when instructing the members on the law applicable to the charged larceny. The *Manual for Courts–Martial,* United States (1995 edition) [hereinafter *MCM,* 1995 or *Manual*] includes ignorance or mistake of fact within its list of special defenses. *See* Rule for Courts–Martial 916(j). The defense applies where, "the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense." *Id.*

While self-help under claim of right is not listed as a defense in the *Manual,* it is a recognized part of military criminal jurisprudence. *See* Dep't of Army, Pam. 27–9, Military Judges' Benchbook, para. 5–18 (30 Sep. 1996) [hereinafter Benchbook]. Claim of right defenses, as they are called in case law,

evolved through application of the concepts of the right to recover one's own property, and the defense of mistake of fact when applied to crimes involving property. *See, e.g., United States v. Gunter*, 42 M.J. 292, 295 n. 4 (1995) (noting the defense evolved from common law concepts of self-defense); *United States v. Birdsong*, 40 M.J. 606, 610 (A.C.M.R.1994) (noting linkage with the defense of mistake of fact); *see also United States v. Smith*, 14 M.J. 68, 71 (C.M.A.1982); *United States v. Eggleton*, 22 U.S.C.M.A. 503, 47 C.M.R. 920, 1973 WL 14867 (1973); *United States v. Dosal–Maldonado*, 12 U.S.C.M.A. 442, 31 C.M.R. 28, 1961 WL 4514 (1961); *United States v. Kachougian*, 7 U.S.C.M.A. 150, 21 C.M.R. 276, 1956 WL 4579 (1956); *United States v. Smith*, 2 U.S.C.M.A. 312, 8 C.M.R. 112, 1953 WL 1638 (1953).

The claim of right defenses embrace two related, but distinct, scenarios. *Compare United v. Mack*, 6 M.J. 598, 599 (A.C.M.R. 1978) (one who takes that which he believes to be his own property), *with Gunter*, 42 M.J. at 295 (seizure of another's property in order to satisfy a debt or acquire security). The first involves a mistaken belief concerning the ownership or identity of property taken or obtained during an act of self-help (recapture under claim of right). The other involves erroneous beliefs about one's right to obtain or take property either as security for, or as satisfaction of, a debt (seizure under claim of right). In both cases, if the accused acts under nothing more than an honest, but mistaken, belief or claim of entitlement, his acts are done without the requisite criminal state of mind (mens rea) and the taking or obtaining is not wrongful. *See Dosal–Maldonado*, 31 C.M.R. 28, 1961 WL 4514 (1961) and *Kachougian*, 21 C.M.R. 276, 1956 WL 4579 (1956) (recovery of money lost to fraud or larceny requires "bona fide" (honest) belief); *Smith*, 8 C.M.R. 112, 1953 WL 1638 and *Gunter*, 42 M.J. 292 (taking of security for alleged debts requires honest belief).

These claim of right defenses, while circumstantially related and normally raised by the same evidence, are distinguishable from incidents where the property taken or obtained is actually owned by the accused or is property actually assigned to the accused by a debtor as security for a debt. In such cases, a failure of proof, rather than a mistake induced taking, would be involved. *MCM*, 1995, Part IV, para. 46b(1)(a),(d). However, the accused might still be guilty of an enabling offense such as unlawful entry. *See Smith*, 8 C.M.R. 112, 1953 WL 1638.

We also observe that the Benchbook's titling of the claim of right instruction as "Self–Help Under a Claim of Right" engenders confusion. Self-help, while always associated with a claim of right, is not a defense at all. Self-help is any action, which has legal consequences, taken outside the legal process, whether the action is legal or not. *See Black's Law Dictionary* 1360 (6th ed.1990). For example, a secured party may take possession of collateral upon default. Uniform Commercial Code § 9–503. However, it is not the "self-help" or "taking of possession" which would provide a defense to larceny, but rather the claim of right or secured identity of the party combined with the collateral nature of the res. The self-help actually is the taking. The defense lies in the claim of right, or belief in ownership, which negates the wrongfulness of the taking due to the lack of a "criminal state of mind."

After considerable discussion, the military judge concluded that mistake of fact was not raised by the evidence because appellant intended to permanently keep the property taken. She also determined that the absence of an agreement between the parties allowing for recovery of property rendered the defense of self-help under claim of right inapplicable. The defense request was denied and neither instruction was given.

The members' finding of guilty excepted out all of the pieces of furniture listed in the larceny specification. However, they convicted appellant of stealing the exercise bicycle and the engagement ring.

### ANALYSIS

Appellant does not contest that he took the engagement ring and the exercise bicycle from the SSG's possession, or that he intended to permanently keep them. Rather, he contends that he owned the property or, at a minimum, that the evidence is insufficient to

establish, beyond a reasonable doubt, that the SSG owned the property and that his taking was wrongful.

■ In reviewing findings for factual sufficiency, our standard is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). Implicit in this test is the requirement that we find proof "beyond a reasonable doubt" as to every element and fact of significance for the offense as charged. *See United States v. Rath*, 27 M.J. 600, 604 (A.C.M.R.1988).

The first, second and fourth elements of the offense of larceny, considered together, require proof of ownership of the property taken and that the accused was not that owner. *MCM*, 1995, Part IV, para. 46b(1)(a), (b), (d). Because of the vagaries of property rights and interests, the phrase "belonged to" (used in the second element) and the concept of ownership, are ultimately defined in terms of "the person [having a] superior right to possession of the property in light of all the conflicting interests therein." *Id.* para. 46c(1)(c)(ii), (iii).

■ Further, for the offense of larceny to exist, the "taking" must be wrongful. *Id.* para. 46c(1)(d). A wrongful taking is accomplished "without the consent of the owner *and with a criminal state of mind.*" *See* Benchbook, para. 3–46–1d, note 2 (Wrongfulness of the taking, withholding or obtaining) (emphasis supplied). The *Manual* ties

wrongfulness and ownership together by noting that a taking is not wrongful "if done by a person who has a right to the possession of the property either equal to or greater than the right of one from whose possession the property is taken." *MCM*, 1995, para. 46c(1)(d).

Applying the above to the facts of this case, we agree that appellant's conviction for larceny is factually insufficient. We start by noting that while New York law [1] or evidence of prevailing social etiquette and custom [2] might have provided evidentiary facts or even definitive guidance concerning ownership of the engagement ring, such evidence was not introduced at trial. Accordingly, the determination of who owned the ring and exercise bicycle requires an evaluation of the parties' credibility and the competing possessory interests, given all the conflicting interests and circumstances. *MCM*, 1995, para. 46c(1)(c)(ii); Benchbook, para. 3–46–1d.

### I. The Engagement Ring

In this regard, we start with the obvious fact that the SSG was given the ring by appellant twice, and that he almost forced it on her the second time. However, the SSG's belief that she owned the ring relied on a self-serving, negative inference, e.g., since appellant never told her that it was a loan or conditional gift, she was the owner. Nothing in the circumstances of the second offer and acceptance of the ring supports a conclusion that that transfer included a greater basis for asserting ownership.

1. Under current New York holdings there is a strong bias favoring retention of ownership of an engagement ring by the donor. However, this bias may be overcome by circumstances showing that the engagement was terminated due to the donor's fraud or fault. *See Lewis v. Permut*, 66 Misc.2d 127, 128, 320 N.Y.S.2d 408 (Civ.Ct.N.Y., Trial Term, Queens County 1971) (citing *Cohen v. Bayside Federal Savings & Loan Assn.*, 62 Misc.2d 738, 741, 309 N.Y.S.2d 980 (S.Ct.N.Y., Trial Term, Queens County 1970)); *Friedman v. Geller*, 82 Misc.2d 291, 292, 368 N.Y.S.2d 980 (Civ.Ct.N.Y., Special Term, Kings County 1975) (recent legislative activity reveals a strong presumption of law that any gifts made during an engagement period are given solely in consideration of marriage, and are recoverable if the marriage does not materialize); *see also Passeri*

*v. Katzenstein*, 183 A.D.2d 817, 586 N.Y.S.2d 523 (N.Y.App.Div.1992). Since New York law on this issue does not consist of a definitive statutory or judicial declaration of property rights, it would merely have been an evidentiary fact in the case. As such we do not consider it, but, in light of the issues raised by this "engagement ring case," merely note its absence.

2. Interestingly, the rules of etiquette and social custom also indicate that when the engagement is broken the parties should immediately return all gifts, *see, e.g.,* Judith Martin, *Miss Manners' Guide to Excruciatingly Correct Behavior* 312 (1982), especially the ring, *see, e.g.,* Peggy Post, *Emily Post's Etiquette* 672 (16th ed.1997).

More importantly, the sincerity of the SSG's conclusion was severely undercut by her immediate return of the ring after the first break-up. This arguable acknowledgement that ultimate ownership of the ring rested with appellant was later reinforced by her threat to destroy or dispose of the property and thereby extract from appellant material retribution for the indignities she suffered due to his dishonorable behavior.

On the other hand, appellant's behavior is consistent with a strong belief in ownership and the desire to protect property threatened with immediate disposal or destruction. Not only did appellant seek further discussion of the issue when the SSG rejected his initial request for the return of the property, he left a note advising the SSG that he had re-possessed that which he claimed to still own. With the exception of the ring, appellant only took items which originally came from his storage.

In this posture, the evidence permits both parties to cogently claim ownership of the ring, with the correct conclusion being far from obvious. Under such circumstances, appellant must be accorded the benefit of the doubt.

## II. The Exercise Bicycle

Concerning the exercise bicycle, we note that counsel forcefully argued that the members' failure to except it from the specification along with all of the furniture taken from the same lot of stored items, raises the specter of an inconsistent finding. In reviewing the record of trial, it may be that the members' result was prompted by their being denied proper instructions concerning mistake of fact and self-help under claim of right. The only significant fact setting the bicycle apart from the other storage items is that it was one of two owned by appellant. However, the inference that this distinction rendered the transfer permanent is countered by the evidence that this item was

offered to facilitate the SSG's physical preparation for the upcoming military schooling.

First, in rejecting appellant's request for a mistake of fact instruction, the military judge misperceived the interface between this defense and larceny. In attempting to determine the mens rea element, she focused on the fourth element's requirement that the taking be "with the intent *permanently to deprive*" the owner of the property. *See MCM*, 1995, para. 46b(1)(d) (emphasis added). The mens rea involved in larceny, however, covers two elements. Larceny is a specific intent crime. An accused must have the specific intent to both wrongfully take and permanently deprive the owner of the property. In focusing on the element that distinguishes larceny from wrongful appropriation, the military judge overlooked the concept of wrongfulness in the first element, which is the heart of the offense and establishes its criminality. The *specific intent to steal* is included in that wrongfulness. *United States v. Sims*, 5 U.S.C.M.A. 115, 117, 17 C.M.R. 115, 117, 1954 WL 2589 (1954); *see also MCM*, 1995, Part IV, para. 46b(1), (2); Benchbook, para. 5–18 note 6 (Mistake of Fact); *United States v. Eggleton*, 22 U.S.C.M.A. 503, 504, 47 C.M.R. 920, 921, 1973 WL 14867 (1973) (if accused's purpose is not criminal he cannot be convicted of larceny); *United States v. Roark*, 12 U.S.C.M.A. 478, 31 C.M.R. 64, 1961 WL 4525 (1961) (criminal intent must accompany the intent to deprive).[3] Because appellant defended on the basis of ownership or a mistaken belief in ownership, mistake of fact applied in this case regardless of the permanency of his intent to keep the property once he gained possession of it.

Our second concern focuses on the current pattern instruction for the defense titled "Self–Help Under Claim of Right." In rejecting applicability of this defense to appellant's case, the military judge focused on the terms of the instruction. While on its face her decision appears correct, we believe it

---

**3.** We recognize that *United States v. Kastner*, 17 M.J. 11, 14 (C.M.A.1983), overruled *Roark*. The decision in *Kastner*, however, realized that *Roark* mistook "innocent purpose or motive" for "innocent intent." *Kastner*, 17 M.J. at 13. An inno-

cent purpose or motive does not defeat criminality. *Id.* at 13–14. An innocent intent, or lack of criminal intent, however, does. *Id.; cf. United States v. Hughes*, 45 M.J. 137 (1996).

was error induced by the incomplete and misleading scope of the instruction.

As currently drafted, the pattern instruction's language only addresses seizure, either for purposes of obtaining security or satisfying a debt. It essentially ignores the situation where an accused mistakenly believes he is recapturing property under a claim of ownership of the property. However, as previously discussed, both scenarios fall within the coverage of the concept of "claim of right." *See also Smith*, 14 M.J. at 70. While note 6 to para. 5–18 cautions that "mistake of fact" may apply and discusses the matter in terms of the recapture scenario, this treatment is easily overlooked and ripe to induce error. This is apparently what happened in appellant's case.[4]

█ Accordingly, we find that the prosecution failed to prove the SSG obtained permanent, unconditional ownership of the ring from appellant. Additionally, the defenses of mistake of fact and recapture under a claim of right were not presented to the members for consideration in reaching their findings. Both defenses were raised by the evidence, bore on the question of wrongfulness, and have been considered by us. In doing so we are satisfied that appellant's conviction for stealing the exercise bicycle is also factually insufficient. On this record, the evidence fails to establish, beyond a reasonable doubt, that appellant's taking of either item was accompanied by the requisite criminal state of mind.

We have reviewed the remaining assignments of error including those personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

The findings of guilty of Charge II and its Specification are set aside and the Charge and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a dismissal, confinement for eleven months, and forfeiture of all pay and allowances.

Senior Judge SQUIRES and Judge TRANT concur.

---

4. We recommend that this structural problem be corrected either through a separate instruction focusing on recapture being added to the chapter, or at least the substance of note 6 being moved to the prefatory comment in note 1 (Using this instruction) so that practitioners are better advised concerning the permutations of the defense of claim of right.