**UNITED STATES, Appellee,**

v.

**Staff Sergeant John L. BANKSTON,
United States Army, Appellant.**

**ARMY 9900918.**

U.S. Army Court of Criminal Appeals.

31 Oct. 2002.

For Appellant: Colonel Adele H. Odegard, JA; Lieutenant Colonel David A. Mayfield,

JA; Major Jonathan F. Potter, JA; Captain Kevin J. Mikolashek, JA (on brief).

For Appellee: Colonel Steven T. Salata, JA; Lieutenant Colonel Margaret B. Baines, JA; Captain Karen J. Borgerding, JA (on brief).

Before CHAPMAN, Senior Judge, CLEVENGER, and CARTER, Appellate Military Judges.

## OPINION OF THE COURT

CLEVENGER, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of conspiracy to commit larceny and larceny, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921 [hereinafter UCMJ]. The members sentenced appellant to a bad-conduct discharge, confinement for twenty-four months, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the sentence as adjudged.[1] The case is before us for review pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c).

In his first assignment of error, appellant asserts that the military judge committed reversible error by denying a requested defense instruction on a mistake of fact defense. We agree.

## FACTS

On 20 June 1999, appellant pushed a shopping cart loaded with approximately forty items of merchandise selected from the Fort Bliss Post Exchange (PX) up to register # 5. He had personally selected four of the items: a pair of FUBU brand shorts, a soundtrack compact disc (CD) titled "Life," body wash gel, and a bottle of body splash. Two other items in the cart had been selected by Staff Sergeant (SSG) Blount and handed to appellant to place in the cart. According to appellant, he was "pretty close" to SSG Blount and his family, and in fact had been at the Blounts' quarters earlier that day. He was

---

1. The Army Clemency and Parole Board upgraded appellant's discharge to a General Discharge and remitted the confinement in excess of twelve months, effective 14 June 2000.

jointly shopping with SSG Blount because SSG Blount was walking with a cane while recovering from knee surgery. Staff Sergeant Blount put all but six of the forty items of merchandise in the cart himself (SSG Blount was later convicted and sentenced for similar offenses by a general court-martial).

Staff Sergeant Blount's wife, Shaunda R. Blount, worked as a cashier on register # 5 at the PX during this time. Appellant went through the checkout process at Ms. Blount's register with all of the merchandise in the cart while SSG Blount left the PX. Ms. Blount optically scanned into the computerized register's memory six items that appellant paid for.[2] She also scanned some of the other items (shoes, sheets, CDs, cosmetics) and then deleted them from the printed register tape of the transaction at her register. She did not scan at all, however, most of the merchandise. Furthermore, she did not separate in any manner the items appellant either personally selected or paid for as she bagged all forty items. Appellant paid $70.24 in cash, got a receipt for six items, and left the PX with all of the merchandise. The value of the additional items exceeded the $70.24 he had paid by about $1,130.00.

Appellant pushed the cart-load of bagged merchandise (worth approximately $1,200.00 at PX retail prices) out of the PX. In the parking lot he met SSG Blount, and they put most of the merchandise into the trunk of SSG Blount's car. Appellant took his items, got in his truck, and drove away.

At trial, appellant testified that SSG Blount told him to checkout with Ms. Blount and she would pay for all of the merchandise not purchased by appellant with a credit card while on her break. Appellant said he asked Ms. Blount if that were so before he began to checkout, and she told him "yes." He also stated that although he was not paying a great deal of attention to the transaction, he did ask Ms. Blount if his items needed to be segregated from the others, and she responded that it was not necessary and that his items would be the only ones on his receipt.

At the instructions conference, the judge said he would give the instruction as to an "honest and reasonable" mistake of fact[3] as it related to both charged offenses concerning the wrongfulness of the taking. The detailed defense counsel agreed, but also asked for the mistake of fact instruction that relates to the specific intent ("honest" mistake of fact instruction)[4] of an alleged criminal actor. The judge ascertained that the defense counsel's request was for the "honest" mistake of fact instruction as it relates to the specific intent to permanently deprive. He then noted that the evidence in the case did not seem to raise that issue. The military judge said:

> I don't know that the evidence has raised that [para. 5–11–1] as far as the intent element of those offenses. It has raised, in the court's view, the mistake as it relates to the wrongfulness of the taking or the obtaining, and that would be the general intent aspect of larceny and wrongful appropriation, as well as the object of the conspiracy under the Specification of Charge I. So, I'll give it as it relates to both of those offenses, as to 5–11–2. But the court doesn't, at the present time, see that the evidence has raised a mistake of fact as it goes towards the intent to permanently deprive.

The defense counsel repeated his request for the "honest" mistake of fact instruction, and the judge asked him to "enlighten the court a bit, as to what evidence was presented that would raise the defense of mistake of fact or ignorance as it relates to that element." The defense counsel then responded that he was "not sure that the evidence ha[d], in fact, raised it." Shortly thereafter, the

---

2. The FUBU shorts, at $36.00; the "Life" CD at $12.49; the body wash gel at $7.50; the body splash at $8.25; and two items of Boys Wear at $1.00 and $5.00 respectively. It was never explained why appellant paid for these two additional items of Boys Wear that he had not personally selected.

3. Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook, para. 5–11–2 (Ignorance or Mistake—When Only General Intent is in Issue) (30 Sept. 1996) (C1, 30 Jan. 1998) [hereinafter Benchbook].

4. Benchbook, para. 5–11–1 (Ignorance or Mistake—Where Specific Intent or Actual Knowledge is in Issue).

judge asked the defense counsel if he wanted to renew a request for the "honest" mistake of fact instruction. The counsel responded, "Not as the evidence is raised," but later stated:

> Let me clarify my position on the mistake defense.... I'm asking for the instruction concerning the mistaken belief—the intent to deprive AAFES permanently. I believe the evidence has raised that. In other words, if my client is of the opinion that the property does not belong to the Army and Air Force Exchange [Service], but rather it belongs to the Blount's [sic], then that raises whether or not he has a question as to who—does he, in fact, believe that he is depriving AAFES permanently of their property.

The judge interpreted this comment as a request for the "honest" mistake of fact instruction. The mistake of fact at issue being would the Blounts pay for the merchandise appellant had not paid for and carried out of the PX. The judge ruled that the evidence in the case did not raise "the defense of mistake of fact as it relates to the element within the larceny to permanently deprive, or within wrongful appropriation to temporarily deprive." He declined to give the "honest" mistake of fact instruction and only gave the members the "honest and reasonable" mistake of fact instruction concerning the "wrongfulness of the taking or obtaining."

## DISCUSSION

Appellant alleges that the military judge erred in not giving the requested "honest" mistake of fact instruction. The government concedes the error—properly relying on *United States v. Binegar*, 55 M.J. 1, 4–6 (2001).[5] In that case, a majority of the United States Court of Appeals for the Armed Forces rejected the different intents as to individual elements of the offense of larceny, which was the analysis of the trial judge here.[6]

■ Both parties agree that an erroneous instruction by the military judge to the panel requires a harmless error analysis before a proper remedy, if any, is determined. *Binegar*, 55 M.J. at 6; *United States v. Santulli*, 28 M.J. 651 (A.C.M.R.1989). The non-constitutional instructional error here is tested to determine "whether the error itself had substantial influence [on the findings]. If so, or if one is left in grave doubt, the conviction cannot stand." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

■ This was not a particularly strong government case at trial. No coactor or coconspirator testified. The proof of the existence of the conspiracy to commit larceny and the substantive larceny offense was solely circumstantial evidence based on appellant's contact with the Blounts before and after the register transaction, Ms. Blount's improper conduct in performing her duties as a PX employee, and the disposition of the merchandise, as well as its overall quantity and quality. The government sought to draw a lot of inferences from those circumstances. The PX's security camera tape and the computerized register report of the transaction and indeed, appellant's own receipt, certainly cast some doubt on the credibility of his testimony. Nevertheless, if the members had been properly instructed by the judge that appellant's mistaken belief that Ms. Blount would subsequently pay AAFES for the Blounts' portion of the merchandise in the cart, need only be an honest, and not necessarily a reasonable belief, then the members may well have interpreted his testimony differently. Like the trial counsel

---

5. We recognize that *Binegar* was decided after appellant's case was tried, but *Binegar* is a restatement of previously existing case law "that an honest mistake of fact as to a soldier's entitlement or authorization to take property is a defense to a charge of larceny." *Binegar*, 55 M.J. at 5.

6. Military judges should note that, notwithstanding the way the elements of larceny are described in the Benchbook and the *Manual for Courts-Martial, United States* (2000 ed.), Part IV, para. 46(b), the relevant specific intent in the Article 121, UCMJ, offenses is not just the temporal question of a permanent or temporary intent to deprive or defraud, but a broader "intent to steal" that embraces the wrongfulness of the first element and the intent to deprive or defraud the owner of the property in the fourth element. *See Binegar*, 55 M.J. at 4–5; *United States v. Jackson*, 50 M.J. 868, 872 (Army Ct.Crim.App.1999).

in *Binegar*, the prosecutor in appellant's case exploited the erroneous instruction before the members by specifically focusing on the lack of reasonableness of appellant's testimony in the government's closing argument and in rebuttal. *See Binegar*, 55 M.J. at 6. Considering the record as a whole, and in light of trial counsel's focus on the unreasonableness of appellant's conduct during closing arguments, we can not be certain with any reasonable degree of assurance that the members did not resolve the case against appellant on this basis. *See id.; United States v. Ward*, 16 M.J. 341, 347 (C.M.A.1983). Therefore, we conclude that appellant was materially prejudiced by the "honest and reasonable" mistake of fact instruction actually given in this case. UCMJ art. 59(a), 10 U.S.C. § 859(a); *Binegar*, 55 M.J. at 6.

## DECISION

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge CHAPMAN and Judge CARTER concur.